STATE of Wisconsin, Plaintiff-Respondent,

v.

William M. STAPLES, Defendant-Appellant.†

Court of Appeals

*No. 79–1221–CR. Argued April 24, 1980.—*
*Decided September 25, 1980.*
(Also reported in 299 N.W.2d 270.)

† Petition to review denied.

For the defendant-appellant there were briefs by *Stephen P. Hurley* and *Pieper & Hurley* of Stoughton, and oral argument by *Stephen P. Hurley*.

For the plaintiff-respondent there was a brief by *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general, and oral argument by *David J. Becker,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. The defendant appeals from a judgment of conviction of violating sec. 946.43(2), Stats. (1975), assault by prisoner, and from an order entered July 3, 1979, denying the defendant's post-conviction motions.

Defendant is an inmate at Wisconsin State Prison at Waupun. On March 26, 1978, he was confined to a seg-

regation building known as the adjustment center. At 8:30 that morning, he and ten other inmates entered the exercise yard adjacent to the adjustment center. While in the yard, several inmates attacked a prisoner named Garza. Additional guards were summoned to help break up the fight. One of these guards was Officer Wagenknecht.

At this point the testimony becomes inconsistent. The exercise officer testified that defendant ran toward Wagenknecht and jumped on him, causing both men to fall on the ground. The tower guard similarly testified that he saw defendant "rush at" Wagenknecht and "jump towards" him. Three other guards testified that they saw defendant running or moving quickly toward Wagenknecht. One testified that defendant "tackled" Wagenknecht, the second said that defendant "grabbed" him, and the third lost sight of defendant after defendant eluded the guard's attempt to stop him. Another guard testified that defendant did not tackle Wagenknecht, but that "they just sort of met in one spot and they each grabbed ahold of each other and fell to the ground."

Officer Wagenknecht testified that he heard defendant yell "Wagenknecht," turned around, and saw defendant running at him. Wagenknecht testified that he "crouched down, grabbed [defendant] around the waist and wrestled him to the ground." In two related preliminary examinations, Wagenknecht had testified that he "tackled" defendant. At trial, Wagenknecht attempted to clarify that testimony by explaining that he did not seek defendant out to tackle him, but that he was describing how the scene would have appeared to an outside observer.

Defendant testified that when he saw Wagenknecht enter the yard, he approached him at a fast walk. Defendant had filed three complaints against Wagenknecht

prior to March 26, 1978, which apparently resulted in Wagenknecht's being reassigned from the adjustment center to duties elsewhere in the prison. Defendant testified that he approached Wagenknecht because he wanted to ask him if it were true that Wagenknecht had been suspended as a result of the last complaint. He further testified that Wagenknecht turned and tackled him when he got close to him. Four other prisoners also testified that Wagenknecht either grabbed or tackled defendant as defendant approached Wagenknecht.

Wagenknecht received injuries during his scuffle with defendant. Defendant claims that he was privileged to use force on Wagenknecht as he was acting in self-defense.

Defendant was found not guilty of assaulting Garza, but was found guilty of assaulting Wagenknecht. Three other counts of assault stemming from the same incident were dismissed at the close of the prosecution's case.

The defendant raises the following issues on appeal:

(1) Was Wagenknecht's testimony that defendant had assaulted several guards in the past prejudicial error which requires reversal of defendant's conviction?

(2) Was defendant deprived of a fair trial by being shackled in leg irons?

(3) Did the trial court err in instructing the jury that it could consider the defendant's appearance, manner and other matters bearing upon credibility when weighing his testimony, in light of the fact that defendant was shackled?

(4) Did the trial court err in failing to instruct the jury that the negation of self-defense is an element of the crime of assault by a prisoner which the state must prove beyond a reasonable doubt?

(5) Did the trial court err in charging the jury with the standard instructions for assault by a prisoner and self-defense because those instructions are contradictory

and would allow a jury to find the defendant guilty in the absence of proof that the defendant's use of force was not privileged?

(1) *Testimony of Past Assaults*

During the trial, the prosecutor asked each corrections officer how he was able to identify defendant. Most testified that they had become familiar with defendant by working with him in the prison. When Wagenknecht testified, however, the following exchange took place:

Q How did you know defendant Staples at the Wisconsin State Prison?
A I've known him for approximately three, four years. He's assaulted several guards.

The defendant objected to this testimony and immediately moved for a mistrial.

■

Evidence of past crimes or bad acts is inadmissible to prove a person's character. Sec. 904.04(2), Stats. It may be admissible for other purposes, such as proof of motive or opportunity. Sec. 904.04(2).

■

The state suggests that this testimony was admissible for proving intent, citing *Dietz v. State*, 149 Wis. 462, 136 N.W. 166 (1912). The state did not make this argument at trial after defendant's objection. It had the opportunity to request that the use of the evidence be restricted to the narrow purpose of showing intent. Sec. 901.06, Stats. Its failure to do so before the court ordered the testimony stricken constitutes a waiver of the argument that the testimony was admissible for any purpose. [1]

---

[1] Even if the state had not waived its argument that Wagenknecht's testimony was admissible, we would hold that the testimony was inadmissible for any purpose. Out of the presence of the jury, Wagenknecht was examined further with regard to his testimony that defendant had assaulted several guards in the past. That testimony made it clear that Wagenknecht was fa-

Because the testimony of defendant's prior assaults on prison guards was not properly before the jury, we must determine whether the trial court erred in refusing to grant defendant's request for a mistrial. We recognize "that one cannot be deemed to have been fairly tried on the question of guilt when the mind of the jury has been prejudiced by proof of the bad character of the accused or of his former criminal misconduct which is not properly in evidence." *Harris v. State*, 52 Wis.2d 703, 704–05, 191 N.W.2d 198, 199 (1971). The determination we must make is whether Wagenknecht's remarks had such a prejudicial effect that a new trial is required in the interest of fairness.

Whether inadmissible proof of bad character is so prejudicial as to require a new trial is a question of fact. *Harris*, 52 Wis.2d at 705, 191 N.W.2d at 199. Because Wagenknecht's testimony does not go directly to defendant's guilt, as does, for instance, an improperly admitted confession, we must consider the testimony in the context of the other facts of the case to determine whether the error was harmless. *Harris*, 52 Wis.2d at 705, 191 N.W.2d at 199. One of the factors we must consider is the curative effect of the court's admonition to the jury to disregard the testimony. *Harris*, 52 Wis. 2d at 705–06, 191 N.W.2d at 199.

We note that "[t]he court has held that prejudice to a defendant is presumptively erased from the jury's collective mind when admonitory instructions have been properly given by the court." *State v. Williamson*, 84 Wis.2d 370, 391, 267 N.W.2d 337, 347 (1978). As soon as defendant objected to Wagenknecht's testimony, the court ordered it stricken and instructed the jury to dis-

miliar with only one prior assault, and knew of that only through hearsay. His testimony was thus inadmissible under the hearsay rule.

regard it. The jury was then removed from the court-room while the mistrial motion was argued to the court. When the jury returned, the court instructed the jury as follows:

THE COURT: The court readmonishes the jury that what was said by this witness will be put out of your minds as absolute and you will not regard any reference to any other assaults by Mr. Staples.

We consider this to be a forceful instruction designed to eradicate any prejudicial effect the testimony may have had.

Our inquiry may not end, however, with this determination. In *Harris,* 52 Wis.2d 703, testimony which intimated that the defendant was a convicted safecracker was also stricken, and the jury was admonished to disregard it. The court held that the admonishment itself would be insufficient to find that the error committed was harmless. *Harris,* 52 Wis.2d at 706, 191 N.W.2d at 199. *See also Paulson v. State,* 118 Wis. 89, 99, 94 N.W. 771, 774 (1903). *Harris* requires us to look at all of the evidence and surrounding circumstances in order to determine whether the error was harmless.

The test for harmless error of nonconstitutional dimensions was recently stated in *Novitzke v. State,* 92 Wis.2d 302, 308, 284 N.W.2d 904, 907–08 (1979), quoting *Wold v. State,* 57 Wis.2d 344, 356, 204 N.W.2d 482, 490 (1973):

"The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. This test is based on reasonable probabilities." (Citation omitted.)

The test has also been formulated in these terms: "Errors committed at trial should not overturn the convic-

tion unless it appears the result might probably have been more favorable to the party complaining had the error not occurred." *Hart v. State,* 75 Wis.2d 371, 394, 249 N.W.2d 810, 820 (1977).

Considering all of the evidence in context, we do not find that the result of defendant's trial might probably have been more favorable to defendant had Wagenknecht not given improper testimony. While the evidence is in conflict as to who tackled whom, the evidence overwhelmingly demonstrates that defendant ran or moved at a fast pace toward Wagenknecht. There is no indication that defendant slowed down or stopped before he and Wagenknecht made contact. On the basis of these facts, defendant's claim of self-defense lacks credibility. Further, while Wagenknecht's improper testimony may have damaged defendant's credibility to some extent, it would not have had an impact on the credibility of defendant's four witnesses. The jury, however, chose to disbelieve their testimony. We cannot say that they might probably have done otherwise if Wagenknecht had not made the improper statement.

Our conclusion is bolstered by the strong admonitions which the trial judge gave to the jury to disregard the improper testimony. "In the instant case the curative instruction was both forceful and immediate." *Gelhaar v. State,* 58 Wis.2d 547, 563, 207 N.W.2d 88, 97 (1973). The jury was twice instructed to disregard the stricken testimony. Coupled with the other evidence of defendant's assaultive behavior which is uninfluenced by the improper comment, we do not believe the jury might probably have believed the defendant's story had the error not occurred. Accordingly, we hold that the error was harmless.[2]

---

[2] We believe, however, that the following admonition from *Harris,* 52 Wis.2d at 705, 191 N.W.2d at 199, bears repeating:

## (2) *Shackling*

During the course of the trial, the court ordered that defendant be kept free of any visible restraints, but that his feet were to be bound by leg irons. Defendant was instructed to stay at his attorney's side at the counsel table so that the jury could not see his legs. When defendant took the stand to testify, the jury was removed from the courtroom while he moved between the witness stand and counsel table.

During direct examination, defendant was asked if he was in chains during an incident at the prison involving an earlier altercation between defendant and Wagenknecht. Defendant answered: "Yes. I was shackled down as I am today, but only I had handcuffs to my side. My arms wasn't free as they are now." Defendant now argues that because this remark made the jury aware that he was shackled during the trial, he was denied his right to a fair trial.

As a general rule, defendants should not be shackled during trial. *State v. Cassel,* 48 Wis.2d 619, 624, 180 N.W.2d 607, 611 (1970).

However, the rule is not absolute as the safety of the court, counsel, witnesses, jurors, and the public may demand shackles on an accused even in the presence of a jury.

While the accused is in the courtroom, the balancing of the rights of the accused and of the public is a matter for the trial court to determine. But when it is necessary to have an accused on trial in restraints before a jury

[T]here was no justification for intimating Harris was a convicted safecracker. Law enforcement witnesses should be cautioned not to intentionally or unintentionally brand a defendant as a convict in their court testimony and thereby jeopardize the fairness of the criminal prosecution and possibly cause the expense of a new trial or an appeal.

The admonition applies with equal force to branding a defendant as a habitual criminal.

in a courtroom, the court has a duty to offset the effect. *Cassel,* 48 Wis.2d at 624, 180 N.W.2d at 611.

If restraint is ordered, the judge must make a record of the reasons why he is requiring restraint. *Cassel,* 48 Wis.2d at 624, 180 N.W.2d at 611.

Defendant first contends that the judge failed to make an adequate record of his reasons for requiring restraint. The judge devoted more than two pages of his decision on post-conviction motions to the issue of shackling. We agree with the trial judge's observation that, while he should have made a more complete record at the time of trial, most of his reasons for requiring restraint are in the record or easily inferred from it. We find that the judge made an adequate record to justify his order imposing restraints.

The defendant next contends that the judge blindly applied his shackling policy without considering the individual facts of this case. On the contrary, we find from the record that the judge took into account that this defendant was a prisoner who was charged with a violent crime, that the victim of his violence would be present in the courtroom, and that the defendant was confined to a segregation building at the prison. These facts are sufficient to justify the use of restraints.

We also find that the judge did everything possible to offset the effect of the restraints. His articulated policy in cases where he determines that a defendant must be shackled during the trial is to limit shackling to leg restraints only, and to keep those shackles from the jury's view at all times. The judge's discussion of restraints demonstrates that he has given much thought to the best means of balancing safety against the rights of a defendant to a fair trial, and that he has developed a policy which is sensitive both to the possibility of prejudice

which results if the jury sees a shackled defendant, and
to the demands of public safety. This policy protects the
public from a potentially dangerous defendant, while
ordinarily keeping from the jury the fact that the de-
fendant is shackled. We approve of this policy and its
application to this case, and hold that it sufficiently
offsets any significant possibility of prejudice against the
shackled defendant.

■
In this case, the jury did become aware of the defend-
ant's shackles despite the judge's safeguards. This
awareness was brought about, however, by the defend-
ant's own actions. He volunteered the fact of his shack-
ling in response to his attorney's question. Neither the
state nor the court took any action which would have re-
vealed the shackling to the jury. Under these circum-
stances, we hold that the defendant has waived any claim
of prejudice to his case that he might otherwise have.
If we were to hold otherwise, any shackled defendant
could automatically guarantee himself a new trial simply
by revealing to the jury the fact that he is shackled.

(3) *Jury Instruction: Manner and Appearance*

The defendant further claims that it was error to
instruct the jury that it could consider the defendant's
"appearance, manner and other matters bearing upon
credibility" when weighing the defendant's testimony.
The defendant claims that this instruction called atten-
tion to the defendant's shackling and compounded what-
ever prejudice he may have suffered because of the
jury's awareness of his restraints.

■
The record indicates that the defendant received a
copy of the jury instructions before they were given to
the jury. He had no objections to them at that time, nor
did he object to the instructions after they were read.
Failure to object to the jury instructions at trial con-

stitutes waiver of that issue on appeal. *Larson v. State,* 86 Wis.2d 187, 196, 271 N.W.2d 647, 650 (1978).[3]

(4) *Jury Instruction: Elements of Offense*

The defendant next asserts that the trial court erred in failing to instruct the jury that an element of the offense of assault by a prisoner is proof beyond a reasonable doubt that the defendant was not justified in using the force he employed. There is no question that "the burden of proving all the elements of a crime beyond a reasonable doubt rests upon the state." *Muller v. State,* 94 Wis.2d 450, 473, 289 N.W.2d 570, 582 (1980). The jury must accordingly be instructed as to what the elements are. *Claybrooks v. State,* 50 Wis.2d 87, 93, 183 N.W.2d 143, 147 (1971). In Wisconsin, it is also true that the burden is on the state to negate self-defense and other affirmative defenses of "privilege" when they are in issue. *See Moes v. State,* 91 Wis.2d 756, 764–65, 284 N.W.2d 66, 70 (1979).

An affirmative defense, however, is not an element of the offense.[4] *Moes,* cited by defendant in support of

---

[3] We are not persuaded by defendant's argument that there has been no waiver because the court had a duty to offset the effect of the shackling, and was derelict in its duty by offering the instruction on its own motion. The purpose of the waiver rule is to call the court's attention to errors and give the court a chance to correct them. The rule is equally applicable whether the court errs by instructing the jury *sua sponte* or at the request of one of the parties. Defendant's failure to object to the jury instruction as given constitutes waiver of any objection he may have had.

[4] "[T]he elements of a crime are its requisite (a) conduct (act or omission to act) and (b) mental fault (except for strict liability crimes)—plus, often, (c) specified attendant circumstances, and, sometimes, (d) a specified result of the conduct." W. LaFave and A. Scott, Jr., *Handbook on Criminal Law* at 45 n. 13 (1972). An affirmative defense is a matter which, assuming the charge to be true, constitutes a defense to it. *Black's Law Dictionary* at 55 (5th Ed. 1979).

this proposition, does not so hold. The jury was correctly instructed that it could find defendant guilty only by finding that the state proved the existence of each element of the crime beyond a reasonable doubt, and by finding beyond a reasonable doubt that defendant was not privileged in his use of force. These instructions protected defendant's due process interests by keeping the burden of persuasion on the state at all times.

(5) *Conflicting Jury Instructions*

Defendant's final contention is that conflicting instructions were given to the jury which require reversal. The alleged conflict is between the instruction setting forth the elements of the offense of assault by a prisoner and the self-defense instruction.

The court gave the following instruction after defining each element of the offense of assault by a prisoner:[5]

As to each count in which a defendant is charged with directly committing a crime if you are satisfied beyond a reasonable doubt that the defendant named in the count was a prisoner confined to a state prison and while so, intentionally caused bodily harm to an officer or an inmate respectively as charged of such prison without the consent of that person, then you should find the

---

The difference between an element of a crime and an affirmative defense to the crime is best illustrated by the respective burdens placed on the state and the defendant with regard to each. The state has both the burden of production and burden of persuasion in proving the existence of each element which defines a crime. *Handbook on Criminal Law* at 44. In Wisconsin, the state also has the burden of persuasion in negating the existence of an affirmative defense. *Moes*, 91 Wis.2d at 764–65, 284 N.W.2d at 70. The defendant, however, always has the initial burden of production in order to make an affirmative defense an issue in the case. *See e.g., United States v. Wolffs*, 594 F.2d 77, 80 (5th Cir. 1979) (defendant has burden of production to raise entrapment defense).

[5] The current version of this instruction is Wis J I—Criminal 1222.

defendant guilty of battery by a prisoner as to that count.

Following the court's instruction on the privilege of self-defense, the court instructed the jury as follows:[6]

If you find that a defendant did intentionally cause bodily harm to an officer or inmate as charged in the information but that he did so under such circumstances that under the law of self defense as it has been explained to you, such use of force was privileged, then you must find the defendant not guilty, giving him the benefit of any reasonable doubt as to whether his conduct was privileged under the law of self defense. In other words, before you can find a defendant guilty of an offense charged, you must be satisfied beyond a reasonable doubt from the evidence in this case that any use of force by him against the person named in the charge if such force was so used was not privileged under the law of self defense as that has been defined for you.

The defendant argues that these instructions are contradictory. He suggests that under the elements instruction, the jury is told that it should find the defendant guilty so long as it finds that each of the seven elements of the crime[7] are present. Under the self-defense in-

---

[6] The current version of this instruction is Wis J I—Criminal 800.

[7] These elements were defined by the court as follows:

First, that at the time of the alleged offense the defendant was a prisoner confined to a state prison.

Second, that the officer or other inmate named suffered bodily harm.

Third, that the defendant committed an act which caused such bodily harm to such officer or other inmate named.

Fourth, that at the time the named officer or inmate suffered such bodily harm he was an officer or inmate respectively of the Wisconsin State Prison as charged.

Fifth, that the defendant intended to cause bodily harm to such person named.

Sixth, that such named person did not consent to such bodily harm.

Seventh, that the defendant knew that person did not consent.

struction, the jury is told that it may not find the defendant guilty by finding the presence of the seven elements unless it also finds that the defendant was not privileged in his use of force. Thus, the defendant argues, the jury is faced with contradictory instructions; one which would allow conviction based on the seven elements alone, and one which would not.

The defendant did not object to these jury instructions at any time during trial. The defendant urges us to hold that he has not waived his right to make this argument on appeal by finding that the conflicting instructions constitute plain error as defined in sec. 901.03(4), Stats.[8] The defendant cites *People v. Wright,* 24 Ill. App.3d 536, 321 N.E.2d 52 (1974), as support for both the argument that the giving of the instructions constitutes plain error and that the conflicting instructions require reversal.

We decline to adopt the Illinois holding in this case. We believe that, while the jury instruction on the elements of the offense should be modified when self-defense is at issue, failure to do so in this case constitutes harmless error.

"[I]nstructions given by the trial court are to be considered in their entirety and in determining whether there is reversible error they must be considered as a whole." *Larson,* 86 Wis.2d at 197, 271 N.W.2d at 651. An error is also rendered harmless if other instructions are given which correctly state the law. *Loveday v. State,* 74 Wis.2d 503, 518, 247 N.W.2d 116, 125 (1976). Considering the instructions as a whole, we do not believe that they give rise to confusion. The elements instruction correctly set forth the elements of the offense. This instruction gave the jury an initial understanding

---

[8] Section 901.03(4), Stats., provides:

Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge.

of what the offense of assault by a prisoner entails. The self-defense instruction is supplemental to the elements instruction. It tells the jury that while ordinarily proof of the elements of the offense would be sufficient to result in a conviction, the fact that self-defense is an issue in the case requires the state additionally to prove beyond a reasonable doubt that the defendant was not privileged in his use of force. The instruction makes it clear that failure of the state to make this proof requires that a verdict of not guilty be rendered. We do not believe that a reasonable jury could totally ignore the self-defense instruction and find guilt based on the elements instruction alone.

While we hold that any error created by giving the two jury instructions was harmless and that the issue was waived by the defendant, we agree with the Illinois court in *Wright,* 24 Ill. App.3d 536, that it is better policy to combine the elements instruction and the self-defense instruction in cases where self-defense is an issue. This would eliminate the possibility of momentary confusion which may attend the reading of the instructions as they were given in this case. The self-defense instruction, if applicable, should be given immediately after defining each element of the offense. Following this, the jury should be instructed that it can find the defendant guilty only if it has been proved beyond a reasonable doubt that each element of the crime was present, and that the defendant was not privileged in his use of force, if any was used.

*By the Court.*—Judgment and order affirmed.

BABLITCH, J. *(Dissenting.)* I would reverse and remand for a new trial in the interests of justice because I think the cumulative effect of the errors claimed on appeal deprived the defendant of a fair trial.

This was a close case tried on sharply conflicting testimony. In this context it strains credulity to posit that a jury which knew that the defendant was in leg irons during trial not only disregarded the inadmissible and highly prejudicial testimony about past attacks on other guards but also held the state to its proper burden of proof on the self-defense issue after receiving confusing instructions.

I agree with the majority that the trial court took all reasonable precautions to offset the effects of the shackles. These precautions failed, however, to the obvious prejudice of the defendant's case. There is no suggestion in the record or otherwise that the defendant's reference to his leg irons was a deliberate attempt to obtain a mistrial.

Where reasonable precautions fail, through inadvertence, to protect a shackled defendant against the potentially prejudicial effects of the shackling, mistrial may well be warranted. In this case, where the failure was preceded by inflammatory references to the defendant's past violence, I would hold that a mistrial was required.