STATE of Wisconsin, Plaintiff-Respondent,

v.

Ray A. TATUM, Defendant-Appellant.

Court of Appeals

*No. 93–2883–CR. Submitted on briefs October 6, 1994.—Decided February 2, 1995.*

(Also reported in 530 N.W.2d 407.)

For the defendant-appellant the cause was submitted on the briefs of *Ray A. Tatum, pro se* of Green Bay.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William L. Gansner*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. This is an appeal from an order denying Ray A. Tatum postconviction relief from judgments convicting him of disorderly conduct, battery, second-degree recklessly endangering safety, extortion, resisting arrest, and three counts of bail jumping. The issue is whether an evidentiary hearing was neces-

sary to determine whether Tatum received effective assistance of counsel, a right guaranteed by the Sixth Amendment to the United States Constitution. We conclude that such a hearing was necessary but only as to one of Tatum's bail jumping charges. Accordingly, we reverse the trial court's order as to that charge[1] and direct the trial court to hold a *Machner* hearing.[2]

Tatum asserted in his postconviction motion that he was entitled to a new trial because his counsel was ineffective. He requested a *Machner* hearing. In his petition, Tatum claimed that trial counsel had failed to assure that a defense witness, Kevin Stevens, would not appear in his jail uniform and in shackles. The trial court denied Tatum's motion without a hearing, concluding that Tatum failed to show that he was prejudiced by the appearance of his shackled witness. Tatum appeals.

---

[1] Tatum's notice of appeal states that he is also appealing from his judgment of conviction. However, Tatum's brief asserts only an ineffective assistance of counsel claim. And he describes his postconviction motion as not raising an issue of trial court error: "Said motion and supporting affidavit only assert[ ] Constitutional error by acts and omissions of defense counsel . . . and not by the presiding trial judge." Because we are remanding this matter for an evidentiary hearing to determine whether trial counsel's performance was deficient and because Tatum does not assert an error at trial, we do not consider his appeal of his judgment of conviction.

[2] In *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908 (Ct. App. 1979), we held that it was a prerequisite to an appellate claim of ineffective assistance of counsel that a hearing be held at which time counsel could be examined and his or her testimony preserved. But in *State v. Washington*, 176 Wis. 2d 205, 216, 500 N.W.2d 331, 336 (Ct. App. 1993), we held that unless a petitioner sets forth sufficient facts to require a *Machner* hearing, the trial court need not hold it.

We review the trial court's denial of a motion for a *Machner* hearing *de novo. State v. Toliver*, 187 Wis. 2d 345, 359, 523 N.W.2d 113, 118 (Ct. App. 1994). It is here that the dissent's analysis takes a wrong turn. We agree with the dissent that we ordinarily review factual inferences deferentially. We do so because a trial court can see and hear witnesses and can more accurately draw factual inferences from testimony than can an appellate court. But here, the very thing of which Tatum complains is the lack of testimonial evidence resulting from the trial court's refusal to hold a *Machner* hearing. That is why we concluded in *Toliver* that our review was not deferential, as the dissent would have it be, but *de novo*.

Tatum's motion read in pertinent part:

> The defendant's . . . Sixth Amendment . . . right[ ] to . . . effective assistance of counsel [was] violated when defendant's trial counsel failed to make adequate arrangements for defendant's witness, Kevin Stevens, to appear before the jury and testify . . . without the use of physical restraints of any kind.

Tatum also argued that his trial counsel failed to ask for a cautionary instruction regarding the shackles as a means to offset the prejudice of the reduced credibility of defendant's witness, Stevens. We need not consider this latter assertion, because we remand for another reason.

In *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993), the court noted that "[a] long line of criminal cases has held that neither the defendant nor witnesses for the defense may be required to testify in shackles unless there is an 'extreme need.' " It quoted

the following from *Illinois v. Allen*, 397 U.S. 337, 344 (1970):

> [E]ven to contemplate such a technique, much less to see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.

*Lemons*, 985 F.2d at 357. The *Lemons* court concluded that since the defendant's tendency towards violence was at issue, his appearance in shackles inevitably prejudiced the jury. *Id.* at 359.

In *Sparkman v. State*, 27 Wis. 2d 92, 96, 133 N.W.2d 776, 779 (1965), the supreme court noted: "We must point out that the evils sought to be avoided by permitting the defendant to appear free from shackles is the creation of prejudice in the minds of the jury before whom the defendant is tried." And, in *Harrell v. Israel,* 672 F.2d 632, 635 (7th Cir. 1982), the court held:

> Concomitant to the defendant's right to appear before the jury without physical restraints is his right to have his witness appear that way also. Although the shackling of defense witnesses may be less prejudicial to the accused because it does not directly affect the presumption of innocence, it nevertheless may harm his defense by detracting from his witness' credibility. Thus, the general rule against the use of physical restraints in the courtroom applies to defense witnesses as well as the defendant himself.

(Citations omitted.)

In *United States v. Garcia*, 625 F.2d 162, 168 (7th Cir.), *cert. denied*, 449 U.S. 923 (1980) (quoting *United States v. Esquer*, 459 F.2d 431, 433 (7th Cir. 1972), *cert. denied*, 414 U.S. 1006 (1973)), the court reaffirmed that "the shackling of witnesses is an unfortunate and undesirable practice which should be employed only in cases of extreme need." The State does not claim that there was an extreme need to shackle Stevens.

The reasoning of these cases is that seeing a person in a courtroom in shackles inevitably prejudices a jury against that person.[3] But the cases which we have cited for this conclusion are all cases involving direct appeals. In direct appeals, the inquiry is whether there was an extreme need for shackles.[4] Here, Tatum asserts that his attorney was ineffective because he failed to take steps to assure that Stevens would not appear in shackles. Prejudice was inherent in the cases on direct appeal in which a defendant or defense witness appeared in shackles without an extreme need for them. But ineffective assistance of counsel cases have developed a specific definition of prejudice which is to be used in those cases.

---

[3] The dissenting opinion ignores these cases, relying solely on *Strickland v. Washington*, 466 U.S. 668 (1984). But it is overly restrictive to ignore a line of cases holding that appearing in shackles prejudices a jury against a defendant either directly or by making a witness's testimony less credible.

[4] *But see State v. Simplot*, 180 Wis. 2d 383, 410, 509 N.W.2d 338, 348 (Ct. App. 1993) (shackles permitted when not visible to the jury); *State v. Staples*, 99 Wis. 2d 364, 375, 299 N.W.2d 270, 275 (Ct. App. 1980) (defendant waives claim of prejudice by telling jury he is shackled); and *Harrell v. Israel*, 672 F.2d 632, 636-37 (7th Cir. 1982) (inconspicuous use of physical restraints did not cause undue prejudice).

In *State v. Marty*, 137 Wis. 2d 352, 356, 404 N.W.2d 120, 122 (Ct. App. 1987), we followed *Strickland v. Washington*, 466 U.S. 668 (1984), and *State v. Johnson*, 126 Wis. 2d 8, 10, 374 N.W.2d 637, 638 (Ct. App. 1985), *rev'd on other grounds*, 133 Wis. 2d 207, 395 N.W.2d 176 (1986), in concluding that prejudice is required before counsel may be found ineffective. But prejudice was defined as whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Marty*, 137 Wis. 2d at 357-58, 404 N.W.2d at 122-23 (quoting *Strickland*, 466 U.S. at 687). We will therefore use that test to determine whether the asserted error of counsel is prejudicial. We may decide either the performance or prejudice prong first. *State v. Moats*, 156 Wis. 2d 74, 101, 457 N.W.2d 299, 311 (1990).

Stevens testified on behalf of Tatum in relation to one of the bail jumping charges. We therefore must consider the State's and Stevens's testimony to determine whether Stevens's presence in shackles was prejudicial, using the test found in *Strickland* and *Marty*. Because Stevens's testimony related only to one of Tatum's bail jumping charges, we limit our inquiry to that charge.

The State introduced Tatum's bond that he signed on the afternoon of May 7, 1992, just prior to being released from jail. The only evidence as to when Tatum was released came from Stevens, who said that both he and Tatum were released at about 2:30 p.m. on May 7. A specific provision of Tatum's bond required that he have no contact, direct or indirect, with the complaining witness, Delphine Patrick. Patrick testified that Tatum called her at 8:00 a.m. on May 7, and told her to drop the no contact provision. She also received a

call from Stevens at about 2:00 p.m. asking if she was going to drop the no contact provision. At about 3:00 p.m., she received another call from Tatum. A neighbor, who knew Tatum's voice, listened to a small portion of the conversation and testified that Tatum asked Patrick to put his clothes in a bag, and that he would send someone over to get them. Patrick testified that Tatum told her that her apartment was his as much as hers and that he wanted the no contact provision dropped. He said that he would give her a week to think about it.

Stevens's testimony refutes that of Patrick and her neighbor. He testified that after he and Tatum were released from jail, they went to Stevens's motel room where they socialized with friends until about 7:30 or 8:00 p.m. At no time did Tatum call anyone. Stevens called Patrick at about 4:00 p.m. to obtain the telephone number of a mutual acquaintance. Though Patrick wanted to talk to him about Tatum, he refused to do so, and upon receiving the telephone number, he hung up.

Had the jury believed Stevens, it could not have believed Patrick's testimony that she received at least one telephone call from Tatum after he signed the May 7, 1992 bond. And, as the cases we have cited hold, when a witness for a defendant appears in shackles, the jury is prejudiced against the witness, and indirectly, against the defendant. But did that deprive Tatum of "a fair trial, a trial whose result is reliable[?]" *Marty*, 137 Wis. 2d at 357-58, 404 N.W.2d at 122-23 (quoting *Strickland*, 466 U.S. at 687). We conclude that it did.[5] The only issue was whether to believe Stevens

---

[5] We have considered whether the "result" refers to the judgment of conviction or to Tatum's sentence. Tatum was sen-

on the one hand or Patrick and her neighbor on the other hand. That issue was solely one of credibility, and Stevens's credibility was diminished by his appearance in shackles. There was no other evidence that Tatum violated the no contact provision of his May 7, 1992 bond upon which we could rely to conclude that the result of Tatum's bail jumping trial was reliable. We are not confident that the jury would have convicted Tatum had it not been prejudiced by Stevens's appearance in shackles. At best, we can conclude only that Tatum might or might not have been convicted. We conclude that the prejudice prong of *Strickland* and *Marty* has been satisfied.

Contrary to the dissent's analysis, we do not review for sufficiency of the evidence. The dissent reviews the reasons why a jury might disbelieve Tatum and Stevens. But the jury might as easily have disbelieved Patrick. Patrick was affiliated with a biker "brotherhood." She testified that the night before awaking at 8:00 a.m. to go to work, she had consumed a quart-and-one-half of malt liquor and was intoxicated. She believed that she was an alcoholic. It would not surprise her that outgoing calls from the jail were not possible until 9:00 a.m. At a preliminary hearing she

tenced to probation for this bail jumping conviction, concurrent with another sentence of probation for resisting an officer, though both sentences were consecutive to prison terms for other offenses. The result is that even if Tatum were found not guilty of bail jumping, he would still serve a three-year term of probation after he finished his prison terms. But we conclude that should Tatum violate his probation, he could be sentenced to consecutive terms if this bail jumping conviction is ultimately affirmed, and to only one term if it is not. Whether "result" refers to Tatum's judgment of conviction or his sentence, the consequence is the same.

556

testified that Tatum called her at 2:00 p.m., while at trial she testified that it was Stevens. She admitted that she was not "real good at the times on everything . . . ."

We do not suggest that the jury would have believed Tatum rather than Patrick. But with the tarnished credibility of all of the witnesses, the prejudice caused by Stevens's appearance in shackles was significant. When the dissent reviews for evidence sufficiency, it does not need to consider Patrick's testimony. But this case is not about evidence sufficiency—it is about Tatum's contention that the trial court erred by denying him a *Machner* hearing.

◾

*Strickland* and *Marty* also require that we consider whether counsel's performance was deficient. This will require a *Machner* hearing. Stevens's testimony was an integral part of Tatum's defense to the May 7, 1992 bail jumping charge. Counsel was familiar with the cases finding prejudice when a defense witness testifies while in shackles. He objected to Stevens's testifying in that condition and he moved for a mistrial. Counsel's seeming failure to obtain Stevens's presence without shackles may constitute deficient performance, but we do not know what steps counsel took to avoid Stevens's appearance in shackles. Counsel's pretrial preparation can be as important as what he or she does at trial.

We therefore must remand so that the trial court can hold a *Machner* hearing to decide the performance prong of the *Strickland* and *Marty* analysis with regard to one of the bail jumping charges.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

GARTZKE, P.J. (*dissenting*). Tatum's motion sought an evidentiary hearing on his request for an order vacating the judgments of conviction and granting him a new trial. He claims that his trial counsel ineffectively represented him by failing to arrange for his witness, Kevin Stevens, to testify in street clothes and without shackles.

When denying the motion, the trial court said, "Other than alleging in general conclusory terms that the defendant was prejudiced by this action [the appearance of Stevens in a jail uniform and shackles], there is no factual basis for it. Any prejudice alleged is speculative at best and without basis in fact or law." We should affirm the court's ruling.

When a postconviction motion raises an ineffective-assistance claim, the matter is ordinarily set for an evidentiary hearing. *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908 (Ct. App. 1979). However, the court to whom the motion is made may rule on it without a hearing if the motion fails to make specific factual allegations requiring resolution by an evidentiary hearing. *State v. Washington*, 176 Wis. 2d 205, 216, 500 N.W.2d 331, 336 (Ct. App. 1993).

To establish a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

A defendant must "affirmatively prove prejudice" and establish that counsel's deficient performance "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. When deciding an ineffective-assistance claim, a court

> must consider the totality of the evidence before the judge or jury. Some of the factual findings will have

been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.

*Id.* at 695-96.

Thus, the *Strickland* court recognized that the determination whether prejudice occurred may require drawing factual inferences from the historical facts. Factual inferences regarding prejudice must be made when, as in Tatum's case, the claimed prejudice is to the defendant's credibility and the credibility of his witness. This is because credibility has to do with the fact finder's mental processes. When the court denied Tatum's motion for an evidentiary hearing, it predicated its ruling on the absence of facts from which prejudice—an improper effect on credibility—could be inferred. Tatum failed to allege facts not already of record, and the court impliedly inferred from the record that Stevens's testifying in a jail uniform and shackles had not affected the jury's assessment of Stevens's and Tatum's credibility.

Our review of a factual inference drawn by the trial court is limited. We must affirm the court's choice if multiple inferences may reasonably be drawn from the record. *State v. Friday*, 147 Wis. 2d 359, 370-71, 434 N.W.2d 85, 89 (1989).

Stevens's testimony is relevant to a single charge in the information: on May 7, 1992, Tatum violated a condition in his bail bond of that same date that he have no contact, directly or indirectly by telephone or through another individual, with Delphine Patrick. I therefore examine the totality of the record pertinent to that charge.

Patrick testified that Tatum called her in the morning on May 7. She heard someone in the background tell Tatum, "[Y]ou better not be calling home because you have a no contact . . . ." According to Patrick, Tatum then said to her, "[O]h yeah, . . . you better drop that [the no-contact condition in the bail bond], too."

Patrick also testified that Tatum's friend Stevens telephoned her that afternoon and told her Tatum wanted to know whether she was going to drop the no-contact condition. She could hear Tatum in the background talking to Stevens. About one hour later, she received a telephone call from Tatum. During that call, he told her to drop the no-contact condition. Her neighbor, Sharon Morine, was present during the call. Morine testified that she was present in Patrick's apartment when Tatum called. Patrick put the telephone receiver up to Morine's ear so she could hear Tatum's voice. Later that day, Patrick received another call, and although the voice was muffled, she knew it was Tatum's.

Stevens testified that on May 7 he was in court, as was Tatum. Both had been in jail. He and Tatum left the courthouse that afternoon, each on a signature bond. They made no telephone calls between the time they left the courthouse and the time they went to Stevens's motel room. After they arrived at the room, Stevens called Patrick to obtain a telephone number. Tatum stayed with Stevens into the evening hours. Tatum made no telephone calls while Stevens was present. Stevens was not always in the room.

John Newbury testified that on May 7 he met Tatum in Stevens's motel room. Two other men were present. Tatum did not call Patrick while Newbury was

present. Newbury was absent from the room a couple of times.

Tatum testified that during the afternoon of May 7 he was taken from the jail to court and was released on a bail bond. Stevens was with him. They went to Stevens's room where they stayed and talked for three or four hours. Tatum made no telephone calls while he was in Stevens's room. He admitted that he had been convicted of crimes on two prior occasions.

A police officer testified that he spoke to Stevens at Tatum's request. Stevens told the officer that he made calls for Tatum to Patrick.

Given the totality of the evidence pertinent to the bail-jumping charge, it was reasonable for the trial court to infer that Stevens's testifying in a jail uniform and shackles did not prejudice the jury's assessment of his or Tatum's credibility. The credibility of each was seriously damaged by other testimony. Tatum's credibility was damaged by (1) his admission of two prior convictions, (2) the testimony of Patrick and her neighbor, and (3) the statement Stevens made to the police officer that he called Patrick for Tatum. Stevens's credibility was damaged by (1) the testimony of Patrick and her neighbor, and (2) the testimony of the police officer.