STATE of Wisconsin,
Plaintiff-Respondent,

v.

Gwendolyn McGEE,
Defendant-Appellant.†

Court of Appeals

*No. 2004AP1005–CR. Submitted on briefs March 1, 2005.
—Decided April 12, 2005.*

2005 WI App 97

(Also reported in 698 N.W.2d 850.)

† Petition to review denied 10-3-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Amelia L. Bizzaro* of *Bizzaro Law Office*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general by *Jeffrey J. Kassel*, assistant attorney general.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Gwendolyn McGee appeals from an order[1] entered after the trial court denied her motion filed pursuant to Wis. Stat. § 118.15(5)(b)2 (2001–02).[2] In that motion, McGee sought dismissal of the complaint against her, which alleged one count of failing to cause a child to attend school, contrary to Wis. Stat. §§ 118.15(1), (5) and 118.16(5) (compulsory school attendance law). The basis for the motion was that she was unable to comply with the compulsory attendance law because of the disobedience of her child. The trial court held that the motion was premature because application of the disobedience defense does not apply unless there has already been a conviction under Wis. Stat. § 118.15(5)(a). Because the trial court erroneously interpreted the statute to require a conviction before the disobedience defense applies, we reverse the order and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. On December 2, 2002, the State filed a complaint against McGee, alleging that she intentionally failed to cause her son, Jeremy, to attend school regularly during the 2001–02 school year, in violation of Wis.

[1] This court granted McGee's petition to appeal from a non-final order on April 27, 2004.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

759

STAT. §§ 118.15(1), (5) and 118.16(5). The complaint alleged that Jeremy had been absent 94 out of the 168 school days, offering excuses only with respect to his absence on 10.5 of those days. The complaint further alleged that six interventions were performed or attempted, including personally notifying McGee regarding Jeremy's truancy, notifying McGee by letter, providing educational counseling to Jeremy, evaluating whether learning problems were causing the truancy, meeting with McGee at her home to discuss the truancy problem, and placing numerous phone calls to McGee to discuss Jeremy's attendance problem.

¶ 3. On March 4, 2004, McGee filed a motion requesting a pretrial evidentiary hearing pursuant to WIS. STAT. § 118.15(5)(b)2. The trial court denied the motion as premature. McGee filed a motion seeking reconsideration, which was also denied. On April 4, 2004, McGee filed a motion to stay the proceedings so that she could pursue an interlocutory appeal. The trial court granted her motion.

¶ 4. On April 9, 2004, McGee filed a petition with this court seeking leave to appeal a non-final order. The State did not oppose the motion, and this court granted the petition by written order dated April 27, 2004.

## DISCUSSION

¶ 5. McGee and the State both agree that the trial court's ruling was erroneous in that the statute does not require a conviction before application of the disobedience defense contained in WIS. STAT. § 118.15(5)(b)2. The parties do, however, disagree as to the timing and characterization of the disobedience defense. McGee contends that the statute is intended to be utilized prior to trial and decided by the trial court. The State

responds that the disobedience defense is an affirmative defense to be presented at trial and submitted to the jury for decision. We agree with the State's position.

¶ 6. The issue in this case involves the interpretation of statutes, a question of law that this court reviews independently. *State v. Michels*, 141 Wis. 2d 81, 87, 414 N.W.2d 311 (Ct. App. 1987). In interpreting statutes, we begin with the language of the statute itself. *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute can be ascertained from the plain language, we need not look any farther than the statute itself. *Id.* "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. The scope, context, and purpose of the statute can be considered in determining the plain meaning of the statute, if they can be ascertained from the statute itself, and as long as the statute is not ambiguous. *Id.*, ¶ 48. If the statutory language is unambiguous, there is no need to consult extrinsic sources, such as the legislative history. *Id.*, ¶ 46. A statute is ambiguous when "it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶ 47.

¶ 7. With these standards in mind, we now set forth the pertinent portion of the statutes at issue in this case. WISCONSIN STAT. § 118.15(1) provides:

> (a) Except as provided under pars. (b) to (d) and sub. (4), unless the child is excused under sub. (3) or has graduated from high school, any person having under control a child who is between the ages of 6 and 18 years shall cause the child to attend school regularly

during the full period and hours, religious holidays excepted, that the public or private school in which the child should be enrolled is in session until the end of the school term, quarter or semester of the school year in which the child becomes 18 years of age.

Section 118.15(5) provides:

(a) 1. Except as provided under par. (b) or if a person has been found guilty of a misdemeanor under s. 948.45, whoever violates this section may be penalized as follows, if evidence has been provided by the school attendance officer that the activities under s. 118.16 (5) have been completed or were not required to be completed as provided in s. 118.16 (5m):

a. For the first offense, by a fine of not more than $500 or imprisonment for not more than 30 days or both.

b. For a 2nd or subsequent offense, by a fine of not more than $1,000 or imprisonment for not more than 90 days or both.

. . . .

(b) 1. Paragraph (a) does not apply to a person who has under his or her control a child who has been sanctioned under s. 49.26 (1) (h).

2. In a prosecution under par. (a), if the defendant proves that he or she is unable to comply with the law because of the disobedience of the child, the action shall be dismissed and the child shall be referred to the court assigned to exercise jurisdiction under ch. 48.

*A. Conviction Requirement.*

¶ 8. We address first the trial court's erroneous ruling. The trial court ruled:

762

The section that you cite refers to someone who's been found guilty of a misdemeanor under section (5) (a), so paragraph (b) doesn't apply unless there's already been the conviction under (5) (a), so if the defendant is convicted, then the Court can look at that next step and see if there's—if the defendant is unable to comply because of the disobedience of the child. Then the Court can dismiss the action and refer the matter to the juvenile court.

If the person is found not guilty, then the Court never has to get to that point, so I don't think that this is something that's pretried. I think that this is premature. I think there has to be a conviction under paragraph (5) (a) for paragraph (5) (b) to apply because paragraph (5) (b) starts out number 1, paragraph (a) does not apply to a person who has under his or her control a child who has been sanctioned under 49.26 (1) (h) and then number 2 says in a prosecution under paragraph (a), so I think that there has to [be] a conviction first before the Court can get to that point, so the request for the motion hearing is denied at this time as premature.

We agree with McGee and the State that the trial court's interpretation of this statute was incorrect. Our analysis starts with the plain language of the statute. The clear language of WIS. STAT. § 118.15(5)(a)1. states: "Except as provided under par. (b) *or* if a person has been found guilty of a misdemeanor under s. 948.45 . . . ." (Emphasis added.) This language clearly and unambiguously sets forth two exceptions which remove an individual from liability. The first exception directs the reader to WIS. STAT. § 118.15(5)(b), and the second exception involves a person found guilty under WIS. STAT. § 948.45.

763

¶ 9. Thus, the next step in the statutory analysis is to turn to Wis. Stat. § 118.15(5)(b) to see if that exception applies to this case. Paragraph (5)(b) has two parts—the first part indicates that this compulsory school attendance law does not apply to a person who has been sanctioned under Wis. Stat. § 49.26(1)(h), which involves the learnfare program. § 118.15(5)(b)1. The second part of paragraph (5)(b) absolves an individual of liability under the compulsory school attendance law if that person proves he or she is unable to comply due to the disobedience of the child. § 118.15(5)(b)2. We conclude that the language of this statute is clear. If either § 118.15(5)(b)*1.* or § 118.15(5)(b)*2.* applies, then the individual is not subject to the penalties of the compulsory school attendance law.

█

¶ 10. Moreover, there is nothing in the language or the context of the statute to reasonably conclude that Wis. Stat. § 118.15(5)(a) requires a conviction under paragraph (5)(a) before paragraph (5)(b) would apply. The exceptions are offered in the alternative, by use of the disjunctive "or." The only reasonable explanation based on the plain meaning of this statute is that liability will not attach under this statute if either paragraph (5)(b) applies or "if a person has been found guilty of a misdemeanor under s. 948.45 . . . ." § 118.15(5)(a). In addition, the misdemeanor conviction is in no way listed as a condition precedent before the exceptions in paragraph (5)(b) come into play. Accordingly, we conclude the trial court erred in ruling that the statute requires a conviction under paragraph (5)(a) before paragraph (5)(b) is triggered. We reverse the trial court's order to that effect and remand for further proceedings.

764

## B. Timing and Characterization of Exception.

¶ 11. We turn now to the disputed issue in this case involving the timing and characterization of the disobedience defense provided in Wis. Stat. § 118.15(5)(b)2. The statute is silent as to when the defendant should be given the opportunity to prove that he or she was unable to comply with the law due to the disobedience of the child. As noted above, McGee argues that the disobedience exception should be determined by the court before trial at a pretrial hearing. She suggests that this would save valuable time and resources because if the trial court finds the defendant proves disobedience, the case would be dismissed without conducting a jury trial. She also contends that the disobedience relates to an element of the offense—whether or not a defendant had control of a child, and therefore should not be construed to be an affirmative defense.[3]

■

¶ 12. The State responds that McGee misunderstands the term "control of the child," that making the disobedience exception a pretrial issue would create a host of constitutional problems, and that the legislative history supports the State's interpretation that the disobedience exception should be interpreted as an affirmative defense presented during trial and submitted to the jury for determination. We agree with the State's analysis and hold that the disobedience exception in Wis. Stat. § 118.15(5)(b)2. is an affirmative

---

[3] The elements of the crime that the State must prove for the statute to apply are: (1) that McGee had control of a child between 6 and 18 years old; and (2) that McGee failed to cause the child to attend school regularly. *See State v. White*, 180 Wis. 2d 203, 212, 509 N.W.2d 434 (Ct. App. 1993).

defense to the charge here and thus should be presented to the fact-finder during the trial for resolution.

¶ 13. First, we agree with the State that McGee misinterprets the term "control of the child" as that term is used in Wis. Stat. § 118.15(5)(a). Although it is clearly an element of the offense, the "control" as used in the statute refers to who has the legal right, duty and responsibility to control a child, not to who actually compels a child to do something. *See Bruttig v. Olsen,* 154 Wis. 2d 270, 276, 453 N.W.2d 153 (Ct. App. 1989). There is a big difference between being the parent or guardian who is legally responsible for a child (legal right and duty to control), and actually being able to force a child to do something (actual ability to exercise and enforce control). As the State points out:

> If McGee's construction of the statute were correct, a parent would not have a legal duty to send his or her child to school if the child were disobedient. Having a disobedient child may relieve a parent or guardian of criminal liability under § 118.15(5) for failing to cause the child to attend school regularly, but it does [not] relieve him or her of the duty to send the child to school.

¶ 14. This interpretation is supported by a related statute, Wis. Stat. § 118.16(5), which explicitly recognizes that actions pursuant to Wis. Stat. § 118.15(1)(a) for failing to cause a child to attend school are brought against "the child's parent or guardian . . . ." § 118.16(5). In harmonizing these two related statutes, *see State v. Robinson,* 140 Wis. 2d 673, 677, 412 N.W.2d 535 (Ct. App. 1987), we conclude that the language "person having under control a child" in § 118.15(1)(a), for the purposes of the school attendance law is a person who has the legal right and duty to control the child, that is, the child's parent or guardian.

766

¶ 15. Second, we agree with the State that interpreting the disobedience defense to be a pretrial issue would create a host of constitutional problems. Due process requires the State to prove beyond a reasonable doubt every element necessary to constitute the crime charged. *See State v. Krueger*, 2001 WI App 14, ¶ 10, 240 Wis. 2d 644, 623 N.W.2d 211, *overruled on other grounds by State v. Gordon*, 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 69. It would be a violation of due process to place the burden of persuasion on a defendant who would be asserting a negative defense, that is, a defense that negates a fact that the State must prove. *State v. Schulz*, 102 Wis. 2d 423, 429–30, 307 N.W.2d 151 (1981). McGee's argument—that the disobedience defense negates the control element of the offense—could result in such a scenario, and therefore violates due process.

¶ 16. Interpreting the disobedience exception to be an affirmative defense would not create the same due process violations. An affirmative defense does not involve an element of the offense. *State v. Staples*, 99 Wis. 2d 364, 376, 299 N.W.2d 270 (Ct. App. 1980). Instead, an "affirmative defense is a matter which, assuming the charge to be true, constitutes a defense to it." *Id.* at 376 n.4 (citation omitted). Due process does not prohibit the state from placing the burden of proving an affirmative defense on the defendant. *See Moes v. State*, 91 Wis. 2d 756, 768, 284 N.W.2d 66 (1979).[4]

---

[4] The State notes that the affirmative defense created by Wis. Stat. § 118.15(5)(b)2. expressly and unambiguously places the burden of proof on the defendant in stating that "if the

¶ 17. In addition, McGee's interpretation removes a factual issue from the jury, potentially violating a defendant's Sixth Amendment right to trial by jury. The Sixth Amendment requires that a jury resolve all factual disputes regarding the defendant's guilt beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476–78 (2000). To accept McGee's position, we would be permitting courts to resolve this factual issue before trial. Under the State's interpretation, the jury trial protection is preserved because the jury would resolve all factual determinations as to the defendant's guilt or innocence.

¶ 18. Based on these constitutional concerns, we conclude that the State's interpretation of the statute is the only interpretation available to avoid an unconstitutional result. *See State v. Schmit*, 115 Wis. 2d 657, 666, 340 N.W.2d 752 (Ct. App. 1983) (we are required to construe statute to avoid unconstitutional result).

¶ 19. Finally, to the extent that the statute is ambiguous because it does not specifically delineate a specific time for the disobedience exception, we conclude that the legislative history of WIS. STAT. § 118.15(5)(b)2. demonstrates that the statute creates an affirmative defense. Before the comprehensive revision of the compulsory school attendance law in 1967, the pertinent portions of the statute read:

**40.77 Compulsory school attendance.** (1) . . .
(a) Any person having under his [or her] control a child

defendant proves . . . ." Thus, this affirmative defense is significantly different from affirmative defenses recognized in the criminal code, such as self-defense and "privilege" defenses in WIS. STAT. ch. 939 because, in these instances, the State has the burden to negate the affirmative defense. *Moes v. State*, 91 Wis. 2d 756, 764–65, 284 N.W.2d 66 (1979).

768

between the ages of 7 and 16 years shall cause such child to attend some school regularly . . . .

> . . . .

> (3) PENALTY. Whoever violates this section . . . shall be fined . . . or imprisoned . . . or both.. In a prosecution under this section, if the defendant proves that he [or she] is unable to comply with the law because of the disobedience of the child in question, *it shall be a good defense* and such child shall be proceeded against as delinquent in the manner and in the courts specified in ch. 48.

WIS. STAT. § 40.77(1), (3) (1965) (emphasis added). Thus, the plain language of the predecessor version of the law clearly indicates that the disobedience exception is a "good defense." It logically follows then that the defense would be presented at trial. The substantial revision of the compulsory school law was not intended to change the timing of the disobedience exception. Rather, the prefatory note to the 1967 Wis. Laws, ch. 92, states:

> It was the primary goal of the subcommittee to make the school laws readily understandable to legislators, school boards, school administrators and the general public. In accordance with its directive, the subcommittee adhered to the following guidelines in completing its assignment:

> > (1) Reorganize the school laws in a more logical manner.

> > (2) Restate clearly the language in the various sections.

> > (3) Eliminate obsolete material.

> > (4) Remove ambiguities and conflicts.

1967 Wis. Laws, ch. 92, Prefatory Notes, 305. These purposes in no way suggest that the revision was intended to change the timing or characterization of the disobedience exception. Moreover, the prefatory note specifically states:

> The subcommittee did not make substantial changes in the meaning or intent of the provisions of existing school laws. However, in the course of its work the subcommittee found it necessary to make policy determinations regarding certain provisions of existing law in order to correct omissions in the law and to reconcile conflicts between various sections. Where these changes have been made, the notes to the bill so indicate.

*Id.* There is no note to indicate that the revisors intended to substantively change the meaning or intent of the disobedience exception. McGee points out that the revision changed the language "it shall be a good defense" to "it shall be dismissed." We are not persuaded that this revision resulted in converting the disobedience exception from an affirmative defense to an issue decided by pretrial motion. The prefatory notes demonstrate that the intent of the new statute was to restate the prior statute and to rearrange its provisions, not to alter the substance of the law. Thus, the substance of the disobedience exception did not change when the statute was revised—the defendant was permitted to present disobedience as a defense under the old version and the defendant is permitted to follow the same procedure under the current version. We conclude that the legislative history supports our construction of the statute that the disobedience exception provides an affirmative defense to the charge of failing to cause the child to attend school regularly.

¶ 20. Based on the foregoing, we remand this matter to the trial court for proceedings consistent with this opinion. That is, McGee is free to present as a defense to the charge against her that her failure to cause Jeremy to attend school regularly was due to his disobedience. This should be presented to the fact-finder for resolution at the conclusion of the trial by special verdict.

*By the Court.*—Order reversed and cause remanded with directions.