STATE, Respondent, v. CASSEL, Appellant.

*No. State 84. Argued October 9, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 607.)

For the appellant there was a brief by *J. Curtis McKay* and *James M. LaPointe,* both of Cedarburg, and oral argument by *Mr. LaPointe.*

For the respondent the cause was argued by *Joseph M. Wilson,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HALLOWS, C. J.   Cassel raises four issues on this appeal: (1) Did the trial court abuse its discretion in refusing to allow the defense to recall the key prosecution

witness for further cross-examination; (2) did the trial court err in denying the defense's motion for a mistrial; (3) was the evidence sufficient to sustain the jury's verdict of conviction; and (4) should a new trial be granted in the interest of justice?

According to Cassel's testimony, he was on parole on the evening of April 12, 1968, and was engaged in drinking with his cousin at his sister's house in Milwaukee. Without Cassel's knowledge during the course of the evening, his cousin put a .22-caliber handgun under the driver's seat of his cousin's automobile. About 2 a. m. on April 13th, Cassel and his cousin left his sister's residence and went to a tavern on North Avenue to obtain more beer. They parked the car behind the tavern and his cousin went into the building to purchase the beer from the bartender who lived above the tavern. While the cousin was gone, Cassel noticed the pistol lying on the floor of the car and picked it up to examine it. It discharged, cracked the horn ring of the car and the windshield.

Daniel Hundt, a police officer on patrol near the tavern, testified he heard a noise in the alley behind the tavern and upon investigation saw Cassel standing near the car with a pistol in his hand. He ordered Cassel away from the car and he attempted to flee. Hundt ordered him to stop or he would shoot. At this point, Cassel allegedly whirled, firing a shot and kept on running. The officer returned the fire with two shots from his revolver. Cassel claims he attempted to elude the officer because of his parole status and did not shoot at Hundt.

*Refusal to allow recall of prosecution witness.*

During the trial the prosecution called Officer Hundt, the cousin and an uncle of Cassel. After the prosecution rested and after the defense had called a few preliminary

witnesses, Cassel's counsel attempted to recall Officer Hundt for further examination. The state objected and the court refused to allow further cross-examination on the ground that *Richards v. State* (1892), 82 Wis. 172, 51 N. W. 652, prohibited such procedure and that Cassel's attorney had stated at the conclusion of his cross-examination of Hundt that he had no further questions to ask of the witness. The *Richards Case* is not in point; this is conceded by both sides. All *Richards* held was that one cannot impeach his own witness.

However, after an attorney has stated to the court he has no further questions of an adverse witness, he may nevertheless have a limited right to recall such witness if he has good reason to do so. The exercise of such right, however, is subject to the discretion of the trial court. 3 Wigmore, *Evidence* (3d ed.), pp. 720, 721, sec. 1036; 3 Wharton's, Anderson, *Criminal Evidence* (12th ed.), p. 341, sec. 917. Here, defense counsel stated as such a reason that he would "be pursuing him to determine whether or not his veracity as a witness truly reflects itself; and if it does not, I think it should be brought to the attention of the jurors." In his brief, Cassel's counsel states the reason for the recall was to lay a foundation for impeachment, but we do not find this is clear in the record as that reason is generally understood.

After an attorney has excused an adverse witness from cross-examination, he has no right to recall such witness to continue general cross-examination and that is all this record shows Cassel's counsel proposed to do. The record indicates counsel intended to engage in a fishing expedition to find some evidence for impeachment, not to lay a specific ground for the use of impeachment evidence. If counsel had disclosed the fact, if it were a fact, that he had evidence which he would lose because he had inadvertently omitted to cross-examine the witness to lay a foundation for its use, the trial court would be obliged to allow the recall of the witness for such purpose.

In *Perkins v. State* (1891), 78 Wis. 551, 47 N. W. 827, we held it was an abuse of discretion for a trial court not to allow further examination when the party requesting the recall had attempted to impeach the witness during his original cross-examination but failed to prove the precise out-of-court statement which would have laid the foundation for impeachment. And more recently in *Sipero v. State* (1969), 41 Wis. 2d 390, 164 N. W. 2d 230, we extended this rationale and held it an abuse of discretion not to allow the defense to recall a prosecution witness which it sought to impeach even though counsel had neglected to lay a proper foundation to impeach the witness during the initial cross-examination. While other areas of impeachment were explored, the defendant did not lay a proper foundation for the impeaching evidence he offered to prove and he would lose the use of evidence having some value to him if he could not recall the witness.

That is not the case here and without some indication of the foundation for impeachment, the trial court did not abuse its discretion in not allowing the recall of the witness for further cross-examination.

### *Was it error to deny a motion for a new trial?*

During the trial Cassel, while being transferred from the courtroom to the jail, was seen by some jurors handcuffed and chained. These incidents occurred in a hall near a tunnel in the courthouse or near the courthouse but outside the courtroom. These views, it is claimed, prejudiced the jury and the court should have granted a motion for a new trial and, failing to do so, should have sua sponte instructed the jury to disregard the incident.

The question here presented is whether a view by some members of the jury of the accused in chains and handcuffs outside the courtroom should be treated as such a view in the courtroom by the jury. We think not. In

*Sparkman v. State* (1965), 27 Wis. 2d 92, 96, 133 N. W. 2d 776, this court followed the general rule phrased in *Way v. United States* (10th Cir. 1960), 285 Fed. 2d 253, 254, that a defendant during the trial of a criminal case should not be in shackles, manacles or handcuffs because such freedom was "an important component of a fair and impartial trial." The opinion explained that the evil sought to be avoided was a creation of prejudice in the minds of the jury before whom the defendant is tried. Prejudice is likely to be engendered psychologically by view of a man presumed to be innocent in the chains and handcuffs of the convicted. However, the rule is not absolute as the safety of the court, counsel, witnesses, jurors, and the public may demand shackles on an accused even in the presence of a jury.

While the accused is in the courtroom, the balancing of the rights of the accused and of the public is a matter for the trial court to determine. But when it is necessary to have an accused on trial in restraints before a jury in a courtroom, the court has a duty to offset the effect. The recent promulgated American Bar Association standards for criminal justice provide:

"Defendants and witnesses should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he should enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge should instruct those jurors that such restraint is not to be considered in assessing the proof and determining guilt." [1]

It is also advisable if restraints are to be ordered that defense counsel be given a prior opportunity to argue the question outside the presence of the jury.

[1] ABA Project on Minimum Standards for Criminal Justice: *Standards Relating To Trial By Jury*, Part IV. Special procedures During Jury Trial 4.1 (c), p. 92.

We think that when a jury or members thereof see an accused outside the courtroom in chains or handcuffs the situation is psychologically different and less likely to create prejudice in the minds of the jurors. Whether an accused should be in chains and handcuffs outside the courtroom is a matter for the sheriff or the police to determine since such custodian is responsible for the safe-keeping and safe transportation of the accused. The record need not show restraints were warranted before and after the accused's appearance in the courtroom. People normally expect to see a prisoner under some re-straints in situations where he is able to escape if not in restraints. One member of the jury so stated. It may even be that seeing a prisoner in chains or handcuffs would generate in some people sympathy rather than prejudice. Here, the views by some members of the jury were casual, momentary and inadvertent. The dramatics of such a situation is essentially different than a court scene. Further the jury was polled after verdict by the defendant on this point and the members who saw Cassel in restraints stated their verdict was not influenced by the incident. In this context we think the court was not obliged as a matter of law to infer the incident was prejudicial.

The question still remains whether the trial court's failure sua sponte to instruct the jury to disregard the incident in deciding the issue of guilt constitutes error. Cassel did not request such an instruction and normally it is not error for a court to fail to give an instruction which is not requested. This court has ruled that a trial court should not be required sua sponte to undertake admonitory instructions. *State v. Yancey* (1966), 32 Wis. 2d 104, 112, 145 N. W. 2d 145 (failure to instruct a jury when an accused pleads the fifth amendment while on the witness stand); *Johns v. State* (1961), 14 Wis. 2d 119, 109 N. W. 2d 490 (the failure to instruct that no presumption arises from failure of accused to take the witness stand on his own behalf). This rationale is

based upon the theory such instructions may do more harm than good and therefore defense counsel should be given the opportunity and responsibility to determine his own trial technique and whether or not he wants an instruction given in such a situation. This rationale was reiterated and affirmed in *Price v. State* (1967), 37 Wis. 2d 117, 130, 154 N. W. 2d 222. We now apply the proposition to these facts that a trial court is not required to instruct the jury sua sponte when it sees the accused in restraints outside of the courtroom.

### *Sufficiency of the evidence.*

The test of whether the evidence is sufficient to sustain a verdict is "whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." *Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183; *State v. Spring,* ante, p. 333, 179 N. W. 2d 841. We have examined the record and have come to the conclusion the evidence is sufficient to sustain the jury's verdict that Cassel endangered the safety of Hundt by conduct regardless of life. Each of the three elements of this crime was adequately proved: (1) The conduct was imminently dangerous to another; (2) the conduct was of such a character it evinced a depraved mind regardless of human life; and (3) such conduct did endanger the safety of another. *See State v. Dolan* (1969), 44 Wis. 2d 68, 73, 170 N. W. 2d 822.

Cassel's argument seems to be that the shot he fired struck the automobile and not Officer Hundt and therefore his conduct was not imminently dangerous and did not endanger the safety of Hundt. The facts on this issue were in dispute. Cassel said the gun went off accidentally in the car and hit the windshield. Hundt testified Cassel shot at him but hit the car. The chip out of the windshield is from the outside, not the inside, and the jury

believed and had a right to believe the testimony of the officer. True, Cassel was a poor marksman but if his marksmanship had been any better he might have been charged with murder.

*New trial in the interest of justice.*

We have said many times that a new trial in the interest of justice under our discretionary reversal power, sec. 251.09, Stats., is to be exercised only if there is a probable miscarriage of justice. Possibilities are not enough; but if it is reasonably probable the accused was not guilty of the crime charged and the trial, while free from reversible error, was of such a character that there was a probable miscarriage of justice for any reason, then justice demands he be given a new trial. *Lock v. State, supra,* at page 118. This record does not reveal any such ground.

*By the Court.*—Judgment and order affirmed.