STATE of Wisconsin, Plaintiff-Respondent,†

v.

Kevin M. CHAMPLAIN, Defendant-Appellant.

Court of Appeals

*No. 2006AP2435–CR. Submitted on briefs October 29, 2007.*
*—Decided December 5, 2007.*

## 2008 WI App 5

(Also reported in 744 N.W.2d 889.)

† Petition to review denied 4/14/08.

234

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martha K. Askins,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

Before Brown, C.J., Anderson, P.J., and Nettesheim, J.

¶ 1. NETTESHEIM, J. A jury found Kevin M. Champlain guilty of burglary and obstructing an officer. Champlain appeals from the ensuing judgment of conviction and from an order denying his motion for postconviction relief. The lead issue stems from the jail administrator's requirement that Champlain wear an armband taser device at the jury trial. Champlain challenges the propriety of its use and, separately, alleges that his trial counsel was ineffective for failing to object to his wearing the device in the presence of the jury.

¶ 2. We agree with Champlain that his trial counsel was ineffective for failing to raise a challenge to the armband taser device. And because we cannot say with confident certainty that the visible device did not unfairly prejudice Champlain, we hold that the prejudice prong of *Strickland*[1] is also satisfied. We also hold that, despite counsel's failure to raise the issue, the trial court had an independent duty to explore the necessity of the device once the court became aware of it.

¶ 3. We do not reach Champlain's other appellate issues, save one. We hold that the evidence circumstantially established the element of nonconsent on the burglary charge. We reverse and remand for a new trial.

## BACKGROUND

¶ 4. The State's evidence is summarized in the criminal complaint. At about 12:30 a.m. on March 24, 2004, City of Fond du Lac police officers responded to

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

the activation of a Varda alarm[2] inside Service Motors,[3] a car dealership. When they arrived, Officer Dennis Sabel observed Champlain appear to be closing a service door of the business. Champlain took off running when he saw the officers. Sabel gave chase on foot and eventually apprehended him. Champlain denied he had been inside the building, maintaining he simply was looking at vehicles on the lot while waiting to meet a friend and fled because he was scared.

¶ 5. Attorney Arik Guenther was appointed to represent Champlain. Right before trial, jail administrator Captain Mark Strand informed Champlain he was to wear a Band-It electronic armband in the courtroom. The Band-It, a polypropylene sleeve that fits from just above the wrist to over the elbow, employs an electrical discharge similar in principle to a stun belt. The electronic box inside the sleeve measures about three inches by six or seven inches, and is an inch or inch-and-a-half thick. A uniformed court officer wearing an activator sat directly behind Champlain at the jury trial in case the unit had to be activated.

¶ 6. Champlain wore his own clothing at the jury trial, declining Strand's offer of a long-sleeved shirt from the jail's property storage. As a result, the short sleeves of Champlain's polo shirt did not conceal the

---

[2] A Varda alarm broadcasts directly on the police radio frequency. The City of Fond du Lac Police Department has several such devices that it loans out to locations where it anticipates criminal activity. This one, loaned to Service Motors after a rash of burglaries at area car dealerships, is like a floor mat that was placed in front of a safe during nonbusiness hours. When someone steps on the mat, the Varda alarm is broadcast.

[3] The parties and witnesses alternately call the burglarized business "Alexander Motors" and "Service Motors." We will use "Service Motors."

240

Band-It on his right forearm. When Guenther noticed the armband and asked what it was, Champlain told him it was "some kind of security thing." Guenther did not object to Champlain having to wear the device or otherwise ask the trial court to inquire whether the device was necessary.

¶ 7.   Champlain elected to testify in his own defense. Of its own accord, the trial court told the parties it would have Champlain come to the witness stand outside the jury's presence so "that part of his arm is out of the view of the jury." The court then asked whether either attorney had "anything else that you want to address." Guenther asked only whether the court would "have the jury taken out before he gets off the stand, also, for the same reason." The jury ultimately convicted Champlain on both counts.

¶ 8.   Newly appointed counsel moved for postconviction relief. The motion alleged ineffective assistance of trial counsel based on Guenther's failure to object to Champlain having to wear the armband taser restraint in view of the jury.[4]

¶ 9.   Guenther testified at the *Machner*[5] hearing that he did not notice the Band-It right away because Champlain wore a sweater that obscured it. He acknowledged that when Champlain told him it was a security device, he did not object or discuss the issue with the trial court because he did not think "it was that big of an issue." Guenther thought the judge said "something like" Champlain should "be seated before

---

[4] The motion also alleged that that Guenther had breached his duty of loyalty to Champlain for stating he did not want to represent Champlain. Champlain does not pursue this issue on appeal.

[5] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (1979).

the jury came in and to put his arm down below the table so it couldn't be seen."[6] The defense table had no skirting or bunting to shield the view beneath the table, and Guenther did not ask for any other special precautions. Guenther was not aware of any discussions about the need for Champlain to wear the device. Nor did he ask why Champlain wore the armband; instead, he "just assumed . . . that they, the jail, thought that there was a possibility that [Champlain] would act up."

¶ 10. Jail administrator Strand gave the following testimony at the *Machner* hearing. He is responsible for maintaining control and order in the jail which includes helping to decide whether electronic restraints are used on prisoners in the courtroom. Jail personnel have discussed courtroom security with the judges in judges' meetings. As a rule "[the judges] leave those decisions up to the jail because we know those particular situations or the volatility of things probably better," and the jail personnel do not include the judge in security decisions in individual cases. Strand decided that Champlain should wear the armband because he was "labor intensive" during his pretrial incarceration. Strand allowed that Champlain had not been the subject of any misconduct reports at that time, and had not threatened to harm himself or others, but he was angry and argumentative about being "unlawfully kept in jail" because he insisted he was innocent. Strand was aware that Champlain's polo shirt did not conceal the Band-It armband, so he offered Champlain a long-sleeved shirt

---

[6] The record does not unequivocally establish that the trial court was aware at the outset of the proceeding that Champlain was wearing the electronic restraint. However, Guenther's testimony and the presence of the uniformed court officer positioned near Champlain suggest that the court may have been aware of the device at this early juncture.

from the jail's property area. Champlain declined, wishing to wear his own clothing. Champlain did not testify at the hearing.

¶ 11. At the close of the *Machner* hearing, the trial court stated it was not convinced that the jury could observe the armband or, if it did, that it would have recognized the device as a taser-type restraint so as to prejudice Champlain. The court denied the motion.

¶ 12. Champlain appealed and his counsel filed a no-merit report. We rejected the report, seeing potential merit in the taser armband issue. We then ordered the state public defender to appoint new appellate counsel, who moved to remand the case for new postconviction proceedings. We instead dismissed the appeal and reinstated Champlain's WIS. STAT. § 809.30 (2005–06)[7] appeal rights.

¶ 13. Back in the trial court, Champlain moved again for postconviction relief under *Machner*. Champlain testified at this hearing, stating that he wore the Band-It on his right forearm and, being right-handed, took notes using his right hand and passed approximately ten notes to his attorney during the trial. Guenther again testified at this hearing, admitting that his earlier testimony at the first hearing that Champlain had worn a long-sleeved sweater was incorrect. After the evidence was closed, Champlain argued that the trial court had improperly ceded to the jail its responsibility to decide whether he should appear before the jury in restraints.

¶ 14. The trial court agreed with the prosecutor that a court must make findings regarding the need for

---

[7] All references to the Wisconsin Statutes are to the 2005–06 version.

restraints, but, as the prosecutor observed, the court first "has to know that there is a restraint in place," something "even [Champlain's] attorney did not know." Because it believed the Band-It would not elicit the same prejudice as would shackles, the court confirmed its earlier ruling. Champlain appeals. We will supply additional facts as we discuss the issues.

## DISCUSSION

### *Waiver*

¶ 15. The State first argues that Champlain has waived the armband issue. The State contends that Champlain cannot not be heard to complain about the jury seeing the armband device when he himself declined Strand's offer of a long-sleeved shirt before he was brought into the courtroom for his trial.

■

¶ 16. However, waiver is the intentional relinquishment of a known right. *State v. Matson*, 2003 WI App 253, ¶ 41, 268 Wis. 2d 725, 674 N.W.2d 51. We indulge in every reasonable presumption against waiver of a constitutional right. *See State v. Baker*, 169 Wis. 2d 49, 76, 485 N.W.2d 237 (1992). In this case, at virtually the last minute before entering the courtroom, Strand informed Champlain he had to wear the Band-It. This event occurred outside the courtroom setting and thus was not captured or preserved on the record. Nor was it memorialized by any other method. Generally, waiver will not be presumed from a silent record. *See id.* We are not prepared to hold that by opting to wear his own clothing instead of something from jail storage, Champlain should be held to have appreciated and weighed the legal implications of declining Strand's

offer. In short, the record does not show that Champlain intentionally relinquished a known right.[8] *See Matson*, 268 Wis. 2d 725, ¶ 41.

¶ 17. We do, however, employ waiver as to Champlain's additional arguments, separate and apart from his ineffective assistance of counsel claim, that his required wearing of the armband device violated his rights to counsel, to be present at trial and to participate in his defense. None of these claims were presented to the trial court. We generally do not review an issue raised for the first time on appeal. *See State v. Schulpius*, 2006 WI 1, ¶ 26, 287 Wis. 2d 44, 707 N.W.2d 495, *cert. denied*, 126 S. Ct. 2042 (2006).

### Ineffective Assistance of Counsel

¶ 18. Criminal defendants are guaranteed the right to counsel under the Sixth and Fourteenth Amendments of the United States Constitution and article I, section 7 of the Wisconsin Constitution. Inherent in the right to counsel is the right to effective counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). We use the same standard for determining whether counsel's assistance is effective under both the Wisconsin and the Federal Constitutions. *State v. Cooks*, 2006 WI App 262, ¶ 32, 297 Wis. 2d 633, 726 N.W.2d 322.

¶ 19. To succeed on a claim of ineffective assistance of counsel, a defendant must show both deficient

---

[8] Moreover, the normal procedure in criminal cases is to address waiver within the rubric of ineffective assistance of counsel, *State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999), and we do so in this case.

representation and that the deficiency was prejudicial. *Strickland*, 466 U.S. at 687. Appellate review of an ineffective assistance of counsel claim presents a mixed question of fact and law. *State v. McDowell*, 2004 WI 70, ¶ 31, 272 Wis. 2d 488, 681 N.W.2d 500. We will not disturb the trial court's findings of fact unless they are clearly erroneous. *Id.* The ultimate determination of whether counsel's performance falls below the constitutional minimum, however, is a question of law subject to our independent review. *Id.*

### 1. Deficient performance

¶ 20. To establish deficient performance, the defendant must show that counsel's conduct fell below an objective standard of reasonableness, making errors so serious that he or she was not functioning as the "counsel" the Sixth Amendment guarantees. *Strickland*, 466 U.S. at 687–88; *Cooks*, 297 Wis. 2d 633, ¶ 33. We make every effort to avoid determinations of ineffectiveness based on hindsight, and the defendant bears the burden of overcoming the strong presumption that counsel acted reasonably within professional norms. *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).

¶ 21. Champlain argues that Guenther should have objected to the armband restraint as soon as he learned what it was and that his failure to do so amounted to deficient performance.

¶ 22. A criminal defendant generally should not be restrained during the trial because such freedom is "an important component of a fair and impartial trial." *Sparkman v. State*, 27 Wis. 2d 92, 96–97, 133 N.W.2d

246

776 (1965) (citation omitted). The defendant may be subjected to physical restraint while in court, however, if the trial judge has found such restraint reasonably necessary to maintain order. *See State v. Cassel*, 48 Wis. 2d 619, 624, 180 N.W.2d 607 (1970).

¶ 23.   Here, because Guenther never raised the issue, the trial court was never called upon to determine whether the armband taser was necessary and, if so, what precautions could have been taken to eliminate or limit jury exposure to the device. In addition, if the jury was exposed to it, the court never was called upon to give a limiting instruction cautioning the jury to not consider that fact in reaching its verdict. *See id.* Instead, we have only limited trial court findings on the matter. The court stated that, from its vantage point, the jury may not have been able to observe the armband when Champlain's arm was underneath the table. The court further stated that the only time the jury might have seen the armband would have been when Champlain was in the witness box, but the height of the box would have kept Champlain's arm from view. The court added that even if the jurors did see the armband, "[i]t's not something which I think most people even know what it is," unlike handcuffs or shackles which have a clear purpose.

¶ 24.   We respectfully disagree. Guenther's earlier *Machner* testimony that Champlain wore a long-sleeved sweater was thoroughly debunked at the later hearing by Champlain's testimony that he wore no such sweater and by Guenther's admission that his earlier testimony was incorrect. The evidence clearly established that Champlain wore a short-sleeved shirt. The armband may not have been visible when Champlain sat with his arm beneath the defense table, but there is no evidence that his arm was, in fact, below the table at all times. To

247

the contrary, the undisputed testimony shows that the jury had many opportunities to observe the restraint. After voir dire, the court asked those selected from the pool to move to the jury box. As is customary, the clerk directed Champlain and others present in the court-room to rise when the full jury pool was ready to be brought in and at various other points throughout the trial. Moreover, Champlain is right-handed and wrote numerous pages of notes which he then passed to Guenther, who sat on his right.

¶ 25.   Whether the jury did or did not have a clear view of the Band-It throughout the trial frankly is somewhat beside the point on this prong of the *Strickland* analysis. Rather, the issue is Guenther's handling of the matter. The State suggests that this "veteran defense attorney['s]" failure to recognize what the device was or that it presented any potential prejudice means his performance was not ineffective. We cannot accept this. An attorney's experience is not the criterion for deter-mining whether the representation was effective in a particular case. *State v. Felton*, 110 Wis. 2d 485, 499, 329 N.W.2d 161 (1983). The right to counsel is more than the right to nominal representation; the representation must be effective. *Id.*

¶ 26.   We might excuse Guenther for not being familiar with the Band-It itself. But once Champlain told Guenther that the armband was a type of security device, we cannot excuse Guenther for failing to raise the question of whether the device was necessary and to ask the trial court make an independent inquiry on the matter. This, of course, assumes that Guenther was knowledgeable about the law pertaining to restraints. Numerous cases address the potential prejudice inher-ent when a criminal defendant appears before a jury

garbed or restrained so as to imply guilt. *See, e.g., Cassel*, 48 Wis. 2d at 623–24. Numerous cases also address that it is for the court, not jail personnel, to determine the necessity for the restraint. *See, e.g., Sparkman*, 27 Wis. 2d at 96. Yet Guenther did nothing when he learned what the armband actually was—in fact, he did not consider it "that big of an issue"—and "just assumed . . . the jail" made the determination. Guenther missed a number of chances to bring this issue to the attention of the trial court: (1) when Champlain told him the armband was a security device; (2) when—by his own testimony—the court told Champlain to keep his arm below the table so the jury could not see it; (3) when the trial court suggested excusing the jury while bringing Champlain to the witness stand; and (4) when, a moment later, the court asked if the attorneys wanted to address anything else.

¶ 27.  Once he learned that Champlain's armband, at least potentially visible to the jury, was an electronic restraint, Guenther had a duty to object or, at a bare minimum, to request the trial court to explore the need for the device. We conclude that Guenther's professional assistance fell below an objective standard of reasonableness such that he did not function as the "counsel" the Sixth Amendment guarantees. *See Strickland*, 466 U.S. at 687–88; *Cooks*, 297 Wis. 2d 633, ¶ 33.

2. Prejudice

¶ 28.  The second *Strickland* prong is prejudice.[9] To establish constitutional prejudice the defendant

---

[9] The prejudice analysis in the context of ineffective assistance of counsel is slightly different than in a direct appeal to

must show that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Cooks*, 297 Wis. 2d 633, ¶ 33. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694). The focus of this inquiry is not the outcome of the trial, but on the reliability of the proceedings. *State v. Thiel*, 2003 WI 111, ¶ 20, 264 Wis. 2d 571, 665 N.W.2d 305. "Reliable" means something that "can be depended upon with confident certainty." *See* THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1628 (2d ed. 1987).

¶ 29. The State contends that Champlain has not established prejudice because it is not clear that the jury ever noticed the Band-It. The State does not dispute that Champlain wore a short-sleeved shirt below which he wore the black, somewhat bulky, wrist-to-elbow sleeve. But the State says the jury would have seen it "[o]nly if the jury happened to be looking at Champlain when he passed notes to [Guenther.]" We are not convinced. Champlain also had to have spent a fair amount of time writing the notes. Further, we have already documented those other times during the trial when the jury likely saw the device. The jury had multiple opportunities to observe Champlain's restraint and, like Guenther, they may well have wondered what it was. They also may have noticed and wondered about the uniformed court officer wearing the activator stationed behind Champlain throughout the trial. Finally,

the propriety of a restraint. *See State v. Tatum*, 191 Wis. 2d 547, 553, 530 N.W.2d 407 (Ct. App. 1995). On a direct appeal, prejudice against a restrained person in the courtroom is presumed because the threshold inquiry is whether there is an extreme need for restraints. *See id.* Here we assess prejudice using the definition specific to ineffective assistance cases.

it stands to reason that the jury would have noted the marked difference in appearance between Champlain's armsthe left bare, the right covered and fitted with the device.

¶ 30. We are not alone in our concern for jury prejudice. When jail administrator Strand realized Champlain's shirt had short sleeves, he offered Champlain a long-sleeved one. The trial court, too, took steps to prevent the jury from viewing the restraint when bringing Champlain to the witness stand outside the presence of the jury. But given the jurors' other opportunities to see the restraint, we cannot say that this isolated precaution was sufficient.

¶ 31. Since no juror testified, we cannot say with absolute certainty that any juror saw the device or, if so, understood the purpose it served.[10] But given the numerous opportunities for such observation and the fact that the device markedly set off the appearance of Champlain's right arm fitted with the device from his bare left arm, we think the only logical conclusions are that the jury saw the device and at least suspected it was intended for security purposes. Finally, we note that Champlain's burden on the prejudice prong is not absolute certainty, but rather to demonstrate "a probability sufficient to undermine confidence in the outcome." *Cooks*, 297 Wis. 2d 633, ¶ 33. In the final analysis, we are not confident in the reliability of this trial result.

---

[10] The State does not argue that Champlain should have presented testimony from the jurors on this question. As a result, the potential application of Wis. Stat. § 906.06(2) governing juror testimony on the validity of a verdict is not before us.

¶ 32.   Apart from Guenther's failure to raise the issue, we further hold that, under the circumstances of this case, the trial court had an affirmative, sua sponte duty to inquire into the necessity for the device once the court became aware of the situation.

¶ 33.   A trial court maintains the discretion to decide whether a defendant should be shackled during a trial as long as the reasons justifying the restraints have been set forth in the record. *State v. Grinder*, 190 Wis. 2d 541, 550, 527 N.W.2d 326 (1995). It is an erroneous exercise of discretion to rely primarily upon law enforcement department procedures instead of considering the risk a particular defendant poses for violence or escape. *See id.* at 551; *see also Sparkman*, 27 Wis. 2d at 96 ("It is for the trial court rather than the police to determine whether such caution is necessary to prevent violence or escape."). In addition, whenever a defendant wears a restraint in the presence of jurors trying the case, the court should instruct that the restraint is not to be considered in assessing the proof and determining guilt. *See Cassel*, 48 Wis. 2d at 624.

¶ 34.   Here, the jail administrator testified that he made the call based on Champlain being argumentative and "labor intensive" in the jail. The record contains no evidence that the trial court evaluated Champlain's risk for flight or violence once the court became aware of the device. To its credit, the court took some precautions, but they are not a substitute for an on-the-record determination of the necessity of restraints in the first instance. Jail administrator Strand alluded to meetings when the judges of Fond du Lac county supposedly

delegated the authority on these matters to jail personnel. We harbor doubt whether the judges have actually abdicated their responsibilities on this question, but if so, it is impermissible under *Grinder* and *Sparkman*. But it is clear that the trial court in this case did not undertake the inquiry mandated by those cases once the court became aware that Champlain was wearing the security device. The judge alone controls the courtroom and alone has the authority and the duty to make a restraint decision.

### *Champlain's Other Issues*

¶ 35.   Champlain raises several other issues: that trial counsel also was ineffective for failing to investigate exculpatory evidence regarding the Varda alarm; that the trial court erred in sustaining an objection regarding the truthfulness of an officer's testimony; and that the burglary conviction should be vacated because the State failed to prove lack of consent, an element of burglary. Because we reverse, we address only the final issue, whether the evidence was sufficient to show lack of consent.

¶ 36.   The State charged Champlain with burglary with intent to steal, contrary to Wis. Stat. § 943.10(1m)(a). It therefore had to prove that Champlain: (1) intentionally entered a building; (2) entered the building without the consent of the person in lawful possession; (3) knew that the entry was without consent; and (4) entered the building with intent to steal. *See* Wis JI—Criminal 1421. Champlain contends the evidence is lacking because no one testified, since no one was asked, about whether he had consent to enter Service Motors.

¶ 37.   Owner nonconsent, like other elements of criminal offenses, may be proved by circumstantial evidence. *See Bohachef v. State*, 50 Wis. 2d 694, 700–01, 185 N.W.2d 339 (1971). The test on review is whether the evidence presented was sufficient to prove guilt beyond a reasonable doubt, and the same standard applies whether the evidence relied upon is direct or circumstantial. *Id.* at 701.

¶ 38.   Here, the police received an alert that the Varda mat triggered an alarm at 12:29 a.m. Service Motors placed the mat in front of its safe after hours. The only person on duty at that time of the night was the night manager/janitor. While the car lot may have been "open" to the public during nonbusiness hours, the evidence clearly established that the office was not. Champlain testified he is from Indiana, had never been in Fond du Lac before, and had arrived in Fond du Lac only half an hour before going to the Service Motors lot. Circumstantially, that placed Champlain at the Service Motors lot at a time when the office was closed. The jury reasonably could have inferred that the night manager/janitor, the person in lawful possession of the building at that time, did not himself set off the Varda alarm and had not given Champlain consent to enter the office. We conclude the circumstantial evidence was sufficient to establish nonconsent.

· *By the Court.*—Judgment and order reversed and cause remanded.