STATE of Wisconsin, Plaintiff-Respondent,

v.

Jason L. MILLER, Defendant-Appellant.†

Court of Appeals

*No. 2009AP3175–CR. Submitted on briefs October 5, 2010.
—Decided February 1, 2011.*

2011 WI App 34

(Also reported in 797 N.W.2d 528.)

† Petition for Review Filed.

732

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Shelley M. Fite*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Michael C. Sanders*, assistant attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Jason Miller appeals from a judgment of conviction for delivering cocaine as a

repeater, and an order denying his motion for postconviction relief. He seeks a new trial on the ground that the circuit court failed to consider the necessity of requiring Miller to wear a stun belt under his civilian clothing. We conclude that a circuit court need not consider the necessity of a restraint that is not visible to the jury. Because the record supports the circuit court's finding that the stun belt was not visible to the jury, we affirm.

## BACKGROUND

¶ 2. Miller was taken into custody shortly after delivering cocaine to a confidential informant, and remained in custody until trial. The court permitted Miller to wear civilian clothes during the trial, but, in accordance with the court's custom, law enforcement officers placed a stun belt underneath the clothing.[1] Miller testified in his own defense. No one mentioned, or apparently noticed, the stun belt over the course of the two-day jury trial.

¶ 3. Miller was found guilty and then sought postconviction relief, alleging he was entitled to a new trial on the ground raised in the present appeal. The circuit court denied Miller's motion, finding among other things that the stun belt was not visible to the jury and therefore did not affect its verdict.

---

[1] The record does not definitively establish the type of stun belt used on Miller. At Miller's postconviction hearing, deputy Kirk Shupbach testified that his office used two types of stun belts at the time of trial. The belts differed only in the number of compartments housing the batteries and electronic components; the first model had only a single compartment, while the second had two. Miller believed he was wearing the first model.

## DISCUSSION

■■

¶ 4. A criminal defendant generally should not be restrained during trial, as freedom is an "important component of a fair and impartial trial." *Sparkman v. State*, 27 Wis. 2d 92, 96–97, 133 N.W.2d 776 (1965) (quoting *Way v. United States*, 285 F.2d 253, 254 (10th Cir. 1960)). This rule stems from the risk of prejudice created when the jury sees the defendant restrained. *Id.* at 96. Trial courts must be aware that "restraints may psychologically engender prejudice in the minds of jurors when they view 'a man presumed to be innocent in the chains . . . of the convicted.'" *State v. Grinder*, 190 Wis. 2d 541, 551–52, 527 N.W.2d 326 (1995) (quoting *State v. Cassel*, 48 Wis. 2d 619, 624, 180 N.W.2d 607 (1970)).

■■

¶ 5. But the rule against restraint is not absolute. The rights of the accused must be balanced against the safety of the public. *Cassel*, 48 Wis. 2d at 624. Occasionally, "the safety of the court, counsel, witnesses, jurors, and the public may demand shackles on an accused even in the presence of a jury." *Id.* Accordingly, a circuit court may exercise its discretion to require restraints when they are "necessary to maintain order, decorum, and safety in the courtroom . . . ." *Flowers v. State*, 43 Wis. 2d 352, 362, 168 N.W.2d 843 (1969); *see also State v. Champlain*, 2008 WI App 5, ¶ 22, 307 Wis. 2d 232, 744 N.W.2d 889.

¶ 6. Relying on *Champlain*, Miller claims he is entitled to a new trial because the trial court failed to conduct a pretrial necessity inquiry, and because it based

its postconviction necessity finding on a court custom rather than on factors specific to Miller.[2]

¶ 7. In *Champlain*, the defendant sought a new trial on the ground that his counsel was ineffective for failing to challenge the jail administrator's requirement that he wear an armband taser at the jury trial. *Champlain*, 307 Wis. 2d 232, ¶ 1. We agreed that Champlain's trial counsel was ineffective, but also held that, despite counsel's failure to raise the issue, a trial court has an "affirmative, sua sponte duty to inquire into the necessity for the device once the court [becomes] aware of the situation." *Id.*, ¶ 32. We emphasized that "[i]t is an erroneous exercise of discretion to rely primarily upon law enforcement department procedures instead of considering the risk a particular defendant poses for violence or escape." *Id.*, ¶ 33.

¶ 8. Two factors lead us to conclude that a trial court's *Champlain* duty does not extend to situations in which the jury cannot see the defendant's restraints.

¶ 9. First, we explicitly stated in *Champlain* that a trial court's sua sponte duty is limited to the circumstances of that case. *Id.*, ¶ 32. *Champlain* is a visible restraint case; the defendant's armband was a "black, somewhat bulky, wrist-to-elbow sleeve" that the jury had multiple opportunities to view because the defendant wore a short-sleeved polo shirt. *Id.*, ¶ 29. Our prejudice finding was based primarily on our conclusion that the device "markedly set off the appearance of

---

[2] The circuit court stated it was "custom and practice" to require defendants in custody to wear stun belts under their civilian clothes while at trial. Our supreme court rejected a similar justification in *State v. Grinder*, 190 Wis. 2d 541, 552, 527 N.W.2d 326 (1995), when it held that the circuit court erroneously exercised its discretion by failing to consider factors beyond the sheriff's department policy on shackling defendants.

Champlain's right arm fitted with the device from his bare left arm . . . ." *Id.*, ¶ 31. Thus, the visibility of the device was central to our decision.

¶ 10. Second, limiting a court's sua sponte duty to visible restraints is consistent with the rationale for the general rule against restraining defendants at trial. As we have stated, the no-restraint rule is designed to prevent the jury from forming an opinion about the defendant's guilt based solely on the fact that the defendant is restrained. *See Cassel*, 48 Wis. 2d at 624; *Sparkman*, 27 Wis. 2d at 96. There is little risk of prejudice if the jury cannot see the restraint. *See Grinder*, 190 Wis. 2d at 552–53 (circuit court's erroneous exercise of discretion did not deny defendant a fair trial because "the court took adequate steps, in advance of any problems which might have occurred, to conceal the shackles from the view of the jury"); *State v. Staples*, 99 Wis. 2d 364, 374–75, 299 N.W.2d 270 (Ct. App. 1980) (trial court's policy of keeping restraints from the jury's view "sufficiently offsets any significant possibility of prejudice against the shackled defendant").

██

¶ 11. We therefore take this opportunity to clarify that a trial court has no sua sponte duty to inquire into the necessity of hidden restraints. The sole remaining question is whether the circuit court's conclusion that Miller's stun belt was not visible is supported by the record.

██

¶ 12. The stun belt was placed around Miller's waist underneath civilian clothing. Both the deputy who fitted Miller with the belt and the prosecutor testified that the stun belt was not visible under Miller's clothes. In addition, the circuit court stated the defendant's appearance at trial was unremarkable:

But I guess the problem I'm having is I was sitting right here at the trial, and I was observing the defendant, and . . . I made no observation that the defendant was other than appropriately dressed with no observable ability to see a stun belt, and to be frank, in all the time that I've sat on the bench, . . . I've never seen a stun belt because every time they come into my court, it's being worn [under civilian clothing] as I have described to protect the defendant's constitutional right not to disclose to the jury that he's in custody.

Because there is no evidence that the jury could see the stun belt, we conclude the circuit court had no duty to inquire into the necessity of the restraint.[3]

¶ 13. In his opening brief, Miller also suggests that, even if invisible to the jury, the psychological effect of wearing the stun belt impacted his constitutional rights to communicate with his counsel and present a defense. *See Gonzalez v. Pliler*, 341 F.3d 897, 900–01 (9th Cir. 2003) (discussing constitutional rights potentially implicated by use of a stun belt). However, in his reply brief Miller clarifies that he "does not raise an independent constitutional ground for relief" and instead used the constitutional discussion in his opening brief for the purpose of rebutting any argument that the error was harmless.[4] Because we have concluded that the circuit

---

[3] Our conclusion does not alter the requirement that a jury be given a cautionary instruction if it becomes aware of a restraint despite the trial court's precautions. *See State v. Champlain*, 2008 WI App 5, ¶ 33, 307 Wis. 2d 232, 744 N.W.2d 889 ("In addition, whenever a defendant wears a restraint in the presence of jurors trying the case, the court should instruct that the restraint is not to be considered in assessing the proof and determining guilt.").

[4] Earlier in this opinion, we discussed the public policy—risk of prejudice—underlying the court's sua sponte duty to inquire into the necessity of a defendant's restraints. *See supra*,

738

court did not err, we need not consider these further arguments.

*By the Court.*—Judgment and order affirmed.

---

¶¶ 4, 9. Our discussion on that point is not to be confused with harmless error, which focuses on whether a particular defendant has suffered actual prejudice as a result of an alleged error. *See Flowers v. State*, 43 Wis. 2d 352, 364, 168 N.W.2d 843 (1969) (trial court erroneously exercised discretion by failing to state the reasons for seating a deputy near the defendant, but error was harmless because record did not indicate the proximity of the deputy to the defendant or that the deputy's attitude "reflected the court's possible opinion that the defendant was a dangerous person or guilty of the crime charged").