COURT OF APPEALS
DECISION
DATED AND FILED

May 16, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2165-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF2154

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ENRIQUE VELEZ-FIGUEROA,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER and DAVID L. BOROWSKI, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Enrique Velez-Figueroa appeals a judgment entered following a jury trial convicting him of second-degree sexual assault of a child and child enticement, and an order denying his postconviction motion.[1]  On appeal, Velez-Figueroa contends that he was denied effective assistance of counsel at trial because counsel failed to:  (1) object to the physical restraints placed on Velez-Figueroa during trial; (2) object to Velez-Figueroa testifying from the defense table; and (3) move to withdraw.  Additionally, Velez-Figueroa contends that the trial court failed to independently inquire into the need for Velez-Figueroa's physical restraints.  We conclude that trial counsel did not perform deficiently, and that the record supports the trial court's decision to restrain Velez-Figueroa.  Therefore, we affirm.

## BACKGROUND

¶2     Velez-Figueroa was charged with one count of second-degree sexual assault of a child and one count of child enticement.  According to the criminal complaint, fifteen-year-old L.W. would go over to Velez-Figueroa's house and Velez-Figueroa would get L.W. drunk and have penis-to-vagina sexual intercourse with her.

¶3     Relevant to this appeal, on June 3, 2019, prior to the start of trial, trial counsel informed the court that he had tried to communicate with Velez-Figueroa about the evidence and his options, but Velez-Figueroa's only response was that he wanted a signature bond.  Trial counsel then stated, "I guess we're

---

[1] The Honorable Jeffrey A. Wagner presided over the trial and sentencing in this case. The Honorable David L. Borowski presided over the postconviction proceedings.  We refer to Judge Wagner as the trial court and Judge Borowski as the circuit court.

going to go to trial," and confirmed that he was prepared to proceed. Velez-Figueroa responded that trial counsel had only met with him on two or three occasions, had not provided him with discovery, and had not prepared for trial. Velez-Figueroa stated on April 30, 2019, that he had previously "fired" trial counsel several times.[2]

¶4 The trial court stated that trial counsel was "not going to be fired on the day of the trial. So let's bring the jury in." The court noted that Velez-Figueroa previously had two other attorneys withdraw and stated that Velez-Figueroa was "not getting another attorney." The court also warned Velez-Figueroa not to make any outbursts in front of the jury, and if he had something to say he should tell his lawyer.

¶5 Subsequently, throughout the trial, Velez-Figueroa repeatedly acted out in the courtroom and disrupted the court proceedings. Velez-Figueroa talked over everyone, used inappropriate language, and made it difficult for the trial to proceed.

¶6 Due to his behavior, Velez-Figueroa was strapped to a wheelchair, outfitted with a stun belt on his leg, wore handcuffs that were chained to his waist, and wore shackles around his ankles that were attached to the floor. In order to obstruct the jury's view of Velez-Figueroa's restraints, he was seated behind a table that was fitted with a skirt. However, at times, Velez-Figueroa chose to sit with his leg up on the table trying to show the jury the stun belt. He also brought attention to his restraints by yelling about the stun belt in front of the jury. In

---

[2] We note that on April 30, 2019, a scheduling hearing took place. There is no indication in the hearing transcript that Velez-Figueroa wished for trial counsel to withdraw.

addition, at one point, according to trial counsel, Velez-Figueroa started rubbing the handcuffs on his wrists together to try to make them bleed and then attempted to hold his hands up.

¶7     During the trial, the State called several law enforcement officers and L.W.  L.W. testified that she met Velez-Figueroa on Facebook and had gone to his apartment more than once.  On one occasion, after visiting a club with Velez-Figueroa, L.W. had an alcoholic drink in Velez-Figueroa's car and then went to his apartment.  L.W. testified that she could not remember much of what happened that night, and the following morning Velez-Figueroa showed her videos on his phone of the two having sexual intercourse.  In support of L.W.'s testimony, the State played portions of the videos and displayed screenshots from some of the videos to the jury.

¶8     After the State rested, Velez-Figueroa told the trial court that he wanted to testify.  The court informed Velez-Figueroa that he would not be allowed to testify from the witness stand due to security reasons.  As a result, Velez-Figueroa testified from the defense table.  Velez-Figueroa denied that he had a sexual relationship with L.W. and denied that he was depicted in the videos played to the jury.

¶9     After the close of evidence, the trial court instructed the jury that Velez-Figueroa wore clothing[3] and restraints consistent with his custody status and that the jury should not consider his custody status and should decide the case

---

[3] Velez-Figueroa appeared in his jail clothes.  Velez-Figueroa was given the opportunity to change into civilian clothes, but he declined.

based on the evidence. After approximately thirty-five minutes, the jury found Velez-Figueroa guilty as charged.

¶10 Velez-Figueroa filed a postconviction motion contending that trial counsel was ineffective when counsel failed to: (1) object to the physical restraints on Velez-Figueroa; (2) object to Velez-Figueroa testifying from the defense table; and (3) move to withdraw. In addition, Velez-Figueroa contended that the trial court failed to inquire into the need for Velez-Figueroa's restraints.

¶11 At the **Machner** hearing, Velez-Figueroa's trial counsel testified.[4] According to trial counsel, Velez-Figueroa's behavior during trial was the worst client behavior he had experienced in his twenty years of practice. Trial counsel testified that Velez-Figueroa did things to draw attention to himself during the trial, including yelling about the stun belt and using swear words.

¶12 When asked why he did not object to Velez-Figueroa's restraints, trial counsel provided two reasons. First, Velez-Figueroa told him that he was going to "blow up" the trial, that he was going to "snap out,"[5] and that he was going to "jump" him, so he was concerned that "it would have been a bigger scene … that would have made it look even worse in front of the jury [than] it already did." Second, trial counsel testified that since the sheriff's department felt the restraints were necessary for security reasons, trial counsel did not believe that the trial court would have agreed to remove them.

---

[4] **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[5] Trial counsel interpreted "snap out" to mean that Velez-Figueroa was going to throw things, spit, try to choke him, or jump him in order to disrupt the trial.

¶13    When asked about his decision not to object to Velez-Figueroa testifying from the defense table, trial counsel explained that he did not want Velez-Figueroa going up on the stand near the jury or the judge. Trial counsel stated that he was concerned that Velez-Figueroa would try to spit at the judge or jury or would "do something worse than what he was doing at the table to try and act out." Trial counsel also stated that if Velez-Figueroa had testified at the witness stand, court personnel would have had to lift Velez-Figueroa's wheelchair and the jury would have been able to clearly see the restraints.

¶14    Finally, trial counsel testified that, prior to trial, Velez-Figueroa never directly asked him to withdraw as counsel. Trial counsel explained that Velez-Figueroa said that he wanted to hire a private attorney, but did not do so. Further, based on the fact that he was the third attorney and it was a year-old child sexual assault case, trial counsel did not believe that the trial court would have allowed him to withdraw on the day of trial.

¶15    The circuit court denied the postconviction motion. The court found that, "[a]ll of the credible evidence, all of it, is that this defendant did everything he possibly could to 'blow-up' the trial." The court observed that in-custody defendants in Milwaukee are always cuffed to the floor and the restraints would not have been of consequence in the average case due to the table skirt. Likewise the stun belt would have been under his clothing. Velez-Figueroa, however, showed the jury his restraints. The court also found that while trial counsel did not say it directly, it was clear that trial counsel was concerned that Velez-Figueroa was going to harm him.

¶16    The circuit court further found that trial counsel had a strategic reason for Velez-Figueroa not testifying from the witness stand, which was that

Velez-Figueroa had been "intentionally difficult, intentionally loud, intentionally abusive and disrespectful [such] that that would not have helped his case." In regards to prejudice, the court stated that the State had a "very strong case" against Velez-Figueroa.

¶17 In addition, the circuit court took judicial notice of the fact that there was no chance that the trial court would have granted a motion to withdraw on the day of the trial given Velez-Figueroa's disruptive behavior and that trial counsel was Velez-Figueroa's third attorney. The court stated that the trial court could have made a better record on the basis for the restraints, but that this did not justify a new trial. This appeal follows. Additional relevant facts are referenced below.

## DISCUSSION

### I. Ineffective Assistance of Counsel

¶18 On appeal, Velez-Figueroa first renews his argument that his trial attorney was ineffective.

¶19 To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a defendant must show that counsel's performance "'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). To demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694. A court need not address both prongs of this inquiry if the defendant does not make a sufficient showing on one. *Id.* at 697.

¶20 Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and law. *State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. "We will not disturb the circuit court's findings of fact unless they are clearly erroneous." *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). "'[T]he circumstances of the case and the counsel's conduct and strategy' are considered findings of fact." *State v. Maday*, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611 (brackets in original; citation omitted). However, whether those facts constitute deficient performance and whether such deficient performance was prejudicial are questions of law, which we review *de novo*. *State v. Tulley*, 2001 WI App 236, ¶5, 248 Wis. 2d 505, 635 N.W.2d 807.

¶21 Velez-Figueroa contends that his attorney was ineffective for not: (1) objecting to his restraints; (2) objecting to the court's decision to have Velez-Figueroa testify from the defense table; and (3) moving to withdraw.

¶22 To prevail on the issue of whether trial counsel's performance was deficient, Velez-Figueroa needs to overcome a strong presumption of reasonableness regarding counsel's strategy:

> Reviewing courts should be highly deferential to counsel's strategic decisions and make every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. This court will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment.

*State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (brackets in original; citations and quotation marks omitted). "Counsel's performance need

not be perfect, or even very good, to be constitutionally adequate." *State v. Dalton*, 2018 WI 85, ¶35, 383 Wis. 2d 147, 914 N.W.2d 120.

¶23 Here, we are not persuaded that trial counsel's conduct was irrational or based upon caprice. *See Breitzman*, 378 Wis. 2d 431, ¶65. To start, at the *Machner* hearing, trial counsel testified that he did not object to the restraints for two reasons. First, he believed that had Velez-Figueroa not been restrained, Velez-Figueroa would have acted out more which "would have made it look even worse in front of the jury then it already did." Second, trial counsel did not believe that the trial court would have sustained an objection to the restraints in light of the sheriff's department's determination that the restraints were necessary for security reasons.

¶24 Velez-Figueroa contends that trial counsel's reasoning that Velez-Figueroa might have acted out "even worse" without restraints is "speculative." However, trial counsel provided specific examples of behavior that informed his trial strategy. Trial counsel testified that Velez-Figueroa said that he was going to "blow up" the trial, "snap out," and "jump" him. Under these circumstances, and given our "highly deferential" standard of reviewing counsel's performance, we cannot conclude that trial counsel was deficient for not objecting to the restraints. *See Strickland*, 466 U.S. at 689.

¶25 Next, Velez-Figueroa has not shown that trial counsel was deficient for failing to object to the court order that Velez-Figueroa testify from the defense table. At the *Machner* hearing, trial counsel testified that, based on the way Velez-Figueroa was acting, he did not want Velez-Figueroa on the witness stand near the judge and jury. Once again, under the circumstances, and given our

"highly deferential" standard of reviewing counsel's performance, we cannot conclude that trial counsel performed deficiently. *See Strickland*, 466 U.S. at 689.

¶26     Finally, Velez-Figueroa cannot show that trial counsel was deficient for failing to move to withdraw.  Trial counsel testified that, prior to trial, Velez-Figueroa never asked him to withdraw as counsel.  Trial counsel explained that Velez-Figueroa said that he wanted to hire a private attorney, but did not do so.  Velez-Figueroa cites no authority establishing that trial counsel had an obligation to inform the trial court of this on the first day of trial.

¶27     In addition, trial counsel also testified that since he was Velez-Figueroa's third attorney on a year-old child sexual assault case, he did not believe that the trial court would allow him to withdraw on the day of trial.  We cannot say this belief was unreasonable.  *See generally State v. Jackson*, 2023 WI 3, ¶26, 405 Wis. 2d 458, 983 N.W.2d 608.  In fact, when Velez-Figueroa told the trial court that he fired trial counsel before the start of the trial, the court responded that "He's not going to be fired on the day of the trial.  So let's bring the jury in."  The court then noted that Velez-Figueroa previously had two other attorneys withdraw and stated that Velez-Figueroa was "not getting another attorney."

¶28     Therefore, we conclude that Velez-Figueroa has failed to show that trial counsel performed deficiently.  It is not this court's prerogative to second-guess trial counsel's reasonable decisions.  *See State v. Oswald*, 2000 WI App 2, ¶71, 232 Wis. 2d 62, 606 N.W.2d 207.[6]

---

[6] Because we conclude that Velez-Figueroa's trial counsel was not deficient, we do not address prejudice.  *See Strickland v. Washington*, 466 U.S. 668, 697 (1984); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

## II.     Trial Court Decision Regarding the Need for Restraints

¶29     Finally, Velez-Figueroa contends that the trial court failed to inquire into the need for physical restraints.

¶30     In response, the State contends that Velez-Figueroa forfeited any challenge to the trial court's actions when trial counsel strategically chose not to object to the restraints at trial.  Alternatively, the State contends that even if this argument is not forfeited, it fails because the record supports the trial court's decision.

¶31     In reply, Velez-Figueroa contends that he did not forfeit his argument and points to *State v. Champlain*, 2008 WI App 5, 307 Wis. 2d 232, 744 N.W.2d 889.  In *Champlain*, the court concluded that trial counsel was ineffective for failing to object to the use of an armband taser device that was visible to the jury.  *See id.*, ¶¶1-2.  The court further stated that "[w]e also hold that, despite counsel's failure to raise the issue, the trial court had an independent duty to explore the necessity of the device once the court became aware of it."  *Id.*, ¶¶2, 32.

¶32     Even if we assume that Velez-Figueroa did not forfeit his challenge based on the language in *Champlain*, we agree with the State that the record supports the trial court's decision to restrain Velez-Figueroa.

¶33     Generally, a criminal defendant should not be restrained during a trial because such freedom is an important component of a fair and impartial trial. *Sparkman v. State*, 27 Wis. 2d 92, 96-97, 133 N.W.2d 776 (1965).  However, a defendant may be subjected to physical restraint while in court if the trial court

"has found such restraint reasonably necessary to maintain order." ***Champlain***, 307 Wis. 2d 232, ¶22.

¶34    Whether restraining a defendant is necessary is left to the discretion of the trial court. *See **State v. Miller***, 2011 WI App 34, ¶5, 331 Wis. 2d 732, 797 N.W.2d 528. "[A] reviewing court may search the record for reasons to sustain the [trial] court's exercise of discretion." *See **State v. LaCount***, 2008 WI 59, ¶15, 310 Wis. 2d 85, 750 N.W.2d 780.

¶35    Here, during the trial, the trial court explained to Velez-Figueroa that he was subject to restraints based on his "disrespect for the law" and because he was "not being very respectful." This is supported by the record. The record is replete with examples of Velez-Figueroa repeatedly talking over the trial court and the parties, using inappropriate language, and making it difficult for the trial to proceed. For instance, at the conclusion of the first day of trial, the State noted that during voir dire, Velez-Figueroa was consistently muttering and talking loudly in the background. Velez-Figueroa said "What the fuck," and rambled or muttered about L.W. being a prostitute. Likewise, at the conclusion of the trial, the State noted that Velez-Figueroa was constantly talking while the court was reading the instructions and while the parties were giving closing arguments. In addition, as previously discussed, at the ***Machner*** hearing, trial counsel testified that, during the trial, Velez-Figueroa threatened to "blow up" the trial, "snap out," and "jump" him.

¶36    Velez-Figueroa contends that the legal standard for physically restraining a defendant at trial "requires more than a vague reference to respect and order in the court" and a court must assess whether a defendant "poses a risk of violence or escape." *See **Champlain***, 307 Wis. 2d 232, ¶33.

12

¶37　Appellate courts, however, generally do not impose a "magic words" requirement in the law.　*See **Michael A.P. v. Solsrud***, 178 Wis. 2d 137, 151, 502 N.W.2d 918 (Ct. App. 1993) ("[T]he trial court's failure to use the 'magic words' does not amount to reversible error."); ***State v. Brown***, 2020 WI 63, ¶¶27-28, 392 Wis. 2d 454, 945 N.W.2d 584 (collecting cases rejecting the need to use "magic words").　Moreover, Velez-Figueroa's disruptive and inappropriate behavior depicted throughout the record supports that Velez-Figueroa presented a risk of violence or escape, and that restraining Velez-Figueroa was necessary.　*See **State v. Shillcut***, 116 Wis. 2d 227, 238, 341 N.W.2d 716 (Ct. App. 1983) (stating that "[r]egardless of the extent of the trial court's reasoning, we will uphold a discretionary decision if there are facts in the record which would support the trial court's decision had it fully exercised its discretion").　Thus, we reject Velez-Figueroa's argument that the trial court erred.

## CONCLUSION

¶38　Therefore, for the reasons stated above, we reject Velez-Figueroa's arguments that his trial attorney was ineffective, and that the trial court failed to inquire into the need for physical restraints.　Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.　*See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).